**FOR PUBLICATION**

ENTERED
APR 16 2004

U.S. BANKRUPTCY COURT
FILED
APR 16 2004

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No. SA 00-19215 JR |
| FLASHCOM, INC., | ) Adv. No. SA 02-1620 JR |
| Debtor. | ) Chapter 11 |
| CAROLYN A. DYE, Liquidating Trustee, | ) |
| Plaintiff, | ) |
| vs. | ) **MEMORANDUM OPINION** |
| ANDRA SACHS; COMMUNICATIONS VENTURES III, LP; COMMUNICATIONS VENTURES III CEO & ENTREPRENEURS' FUNDS LP; MAYFIELD IX; MAYFIELD ASSOCIATES FUNDS IV; DAVID HELFICH; TODD BROOKS; BRADFORD SACHS; RICHARD RASMUS; and KEVIN FONG, | ) |
| Defendants. | ) Date: April 8, 2004<br>) Time: 9:30 A.M.<br>) Courtroom: 5A |

## I. INTRODUCTION

After filing a chapter 11[1] petition, Flashcom, Inc. ("Debtor") filed a plan of reorganization that was confirmed on

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.



December 11, 2001. Debtor's plan made Carolyn Dye ("Trustee") liquidating trustee for Debtor's estate.

On July 11, 2002, Trustee filed a complaint (the "Complaint") against the defendants listed above ("Defendants"). Defendants filed a motion for partial summary judgment (the "Motion"), asserting that the California Corporations Code ("CCC") does not apply to the claims asserted in the Complaint as a matter of law. Trustee opposed the Motion. After the hearing on April 8, 2004, I took the matter under submission.

## II. JURISDICTION

I have jurisdiction over this matter under 28 U.S.C. § 157(b)(1). This is a core proceeding under the Bankruptcy Code, as defined in 28 U.S.C. § 157(b)(2)(A),(F),(H) and (O).

## III. STATEMENT OF FACTS

The Complaint alleges the following: Defendants either orchestrated or participated in certain unauthorized, improper, or otherwise avoidable agreements and transfers (the "Agreements and Transfers") with Debtor between September 1999 and February 2000. Most significantly, Debtor improperly redeemed stock held by Andra Sachs for $9 million (the "Stock Redemption") on February 23, 2000.

Also, David Helfrich, Todd Brooks, Bradford Sachs, Andra Sachs, Richard Rasmus, and Kevin Fong were members of Debtor's board of directors. Communications Ventures III, LP and Communications Ventures III CEO & Entrepreneurs Fund LP (the "CV Defendants") were shareholders of Debtor and were controlled by

Helfrich.  Mayfield IX and Mayfield Associates Funds (the "Mayfield Defendants") were shareholders of Debtor and were controlled by Brooks and Fong.

The Complaint includes claims for (1) avoidance and recovery of unauthorized corporate agreements and payments under CCC § 310, Delaware law, and other applicable non-bankruptcy law (the "Fifth Claim"); (2) avoidance and recovery of improper corporate agreements and payments under CCC §§ 501-503, 506, and 2115 (the "Seventh Claim"); (3) breach of fiduciary duty by Debtor's directors and officers under CCC §§ 315-317 and 2115-2116, and Delaware law (the "Tenth Claim"); (4) negligence and corporate waste under CCC §§ 315-317 and 2115-2116, and Delaware law (the "Eleventh Claim"); and (5) liability for unlawful dividends, purchase, or redemption under CCC §§ 316 and 2115-2116, and Delaware law (the "Twelfth Claim").

The CV Defendants, the Mayfield Defendants, Helfrich, Brooks and Fong ("Movants") seek partial summary judgment, arguing that the CCC did not apply to Debtor at the time the Agreements and Transfers occurred.  Movants argue that CCC § 2115, which makes certain provisions of California law[2] applicable to foreign corporations if certain requirements[3] are met over a specified

---

[2] The CCC sections listed under CCC § 2115(b) include: § 316 (liability of directors for unlawful distributions), § 317 (indemnification of directors, officers, and others), §§ 500 to 505 inclusive (limitations on corporate distributions in cash or property), and § 506 (liability of shareholder who receives unlawful distribution). See Cal. Corp. Code § 2115(b).

[3] In general terms, the requirements measure the extent of a foreign corporation's activity in California.  This "three-factor formula" includes a property factor, a payroll factor, and a sales factor, as those terms are defined in the California Revenue and Taxation Code.  See Cal. Corp. Code § 2115(a).

3

period of time,[4] was not triggered by Debtor until January 1, 2001, after the Agreements and Transfer took place. Accordingly, Movants contend that they are entitled to partial judgment on those claims in the Complaint that are based on CCC § 2115.

Additionally, Movants assert that as a Delaware corporation, the doctrine of internal affairs requires the application of Delaware law to issues of Debtor's internal affairs, including the Agreements and Transfers. Therefore, Movants argue that CCC §§ 310 and 315 do not apply to Debtor and that summary judgment on those claims is appropriate. Andra Sachs joins the Motion.

In opposition, Trustee argues that the trigger date for the application of CCC § 2115 to Debtor was January 1, 2000, prior to the Stock Redemption. Trustee also asserts that the internal affairs doctrine does not apply under these circumstances given Debtor's extensive activities in California. Accordingly, Trustee argues that her claims based on California law should stand.

The following facts are undisputed:

1) Debtor was first incorporated in Nevada on May 19, 1998;

2) Debtor was reincorporated in Delaware on January 20, 1999;

3) Debtor was operating as a foreign corporation in California at all relevant times;

4) Debtor's fiscal year is set as the calendar year; and

5) Just for the Motion, Debtor's activity in California satisfied the three-factor formula under 2115(a) at all

---

[4] Under CCC § 2115(a), the three-factor formula must be met for a "full income year." Subdivision (d) then provides a trigger date for the application of the CCC sections specified in subdivision (b). See Cal. Corp. Code § 2115(a).

4

relevant times.

## IV. DISCUSSION

1. <u>The Application of CCC § 2115</u>

CCC § 2115 provides in relevant part:

> (a) A foreign corporation . . . is subject to the requirements of subdivision (b) commencing on the date specified in subdivision (d) and continuing until the date specified in subdivision (e) if:
>
> (1) the average of the property factor, the payroll factor, and the sales factor (as defined in Sections 25129, 25132, and 25134 of the Revenue and Taxation Code) with respect to it is more than 50 percent during its **latest full income year** and
>
> (2) more than one-half of its outstanding voting securities are held of record by persons having addresses in this state appearing on the books of the corporation on the record date for the latest meeting of shareholders held during its latest full income year or, if no meeting was held during that year, on the last day of the latest full income year. The property factor, payroll factor, and sales factor shall be those used in computing the portion of its income allocable to this state in its franchise tax return or, with respect to corporations the allocation of whose income is governed by special formulas or that are not required to file separate or any tax returns, which would have been so used if they were governed by this three-factor formula.
>
> . . .
>
> (d) For purposes of subdivision (a), the requirements of subdivision (b) shall become applicable to a foreign corporation only upon the first day of the first income year of the corporation (1) commencing on or after the 135th day of the income year immediately following the latest income year with respect to which the tests referred to in subdivision (a) have been met or (2) commencing on or after the entry of a final order by a court of competent jurisdiction declaring that those tests have been met.

Cal. Corp. Code § 2115 (emphasis added). Here, the only issue pertaining to the application of CCC § 2115 is when the trigger date under subsection (d) occurred. The statute is clear that the three-factor formula under subdivision (a) must be met for a "full income year" before the trigger date can be determined under subdivision (d).

Movants argue that the term "full income year" means a full calendar or fiscal year. Under this interpretation, Debtor satisfied subdivision (a) in 1999,[5] causing the 135-day count to begin on January 1, 2000, thereby making January 1, 2001 the trigger date under subdivision (d).

Trustee argues that the term "income year" under subdivision (d) does not require a full fiscal or calendar year. Rather, Trustee asserts that the income year requirement is met by the period from May 19, 1998 to December 31, 1998, or by the period from May 19, 1998 to May 19, 1999. In either case, the trigger date under subdivision (d) would then be January 1, 2000, prior to the Stock Redemption on February 23, 2000.

No reported cases discuss the meaning of "full income year" as used in CCC § 2115. However, the three-factor formula under subdivision (a) is based on data "used in computing the portion of [the foreign corporation's] income allocable to this state in its franchise tax return . . . ." Cal. Corp. Code 2115(a)(2). Section 2115(a)(1) also states that the three factors are defined

---

[5] Although Debtor began its operations in May 1998, Debtor's fiscal year was set as the calendar year, making the period from May to December 1998 less than a full calendar or fiscal year. Therefore, Debtor's first full fiscal year was 1999.

in the California Revenue and Taxation Code.  For the purposes of calculating franchise taxes, the term "income year" is defined as "the calendar year or the fiscal year upon the basis of which the net income is computed."  Cal. Rev. & Tax. Code § 23042.

Indeed, the only workable definition of "full income year" as used in CCC § 2115 is a full calendar or fiscal year.[6]  A foreign corporation must apply the three-factor formula to its activities in California using data from its franchise tax return.  Franchise taxes are payable for every "taxable year," which is also defined as a calendar year or fiscal year.  Id. § 23041.  Therefore, a foreign corporation cannot determine whether its activity in California satisfies the three-factor formula for a full income year without data from a full fiscal or calendar year.

The California Court of Appeal has explained:

> In construing statutory language, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.  We begin by examining the statutory language, giving the words their usual and ordinary meaning.  If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.

People v. Connor, 115 Cal. App. 4th 669, 678 (2004); see also Great Lakes Props., Inc. v. City of El Segundo, 19 Cal. 3d 152, 155 (1977) (stating that unless a term is specifically defined by

---

[6] The limited secondary authority interpreting CCC § 2115 has also found that the term "income year" refers to the calendar year or fiscal year upon which a foreign corporation computes its net income and franchise taxes.  See 2 Marsh, Marsh's California Corporation Law, § 26.04[c], 26-86 (4th ed. 2000); see also Ballantine & Sterling, California Corporaton Laws, § 393.04 (2003).

statute, or it is clearly shown that a different meaning was intended, the plain meaning governs). Here, "calendar year" is not defined under the CCC or the California Revenue and Taxation Code. However, "[t]he literal meaning of the term 'calendar year' is the period of twelve months between January 1 and December 31." Jensen v. Johnson County Youth Baseball League, 838 F. Supp. 1437, 1441 (D. Kan. 1993) (citing Bonray Oil Co. v. Dep't of Energy, 472 F. Supp. 899, 902 (D. Okla. 1978)). Accordingly, the term "full income year" as used in CCC § 2115 means a full fiscal year or twelve-month period from January 1 to December 31.

Here, Debtor's fiscal year was set as the calendar year. Therefore, Debtor's first full fiscal year, or first "full income year," was 1999. For purposes of the Motion, the parties agree that Debtor's activity in California in 1999 satisfied the three-factor formula. Under subdivision (d), the 135-day period began to run on January 1, 2000 and expired on May 13, 2000, making January 1, 2001 "the first day of the first income year . . . commencing on or after the 135th day . . . ." Therefore, January 1, 2001 was the trigger date for the application of CCC § 2115 to Debtor.

The Agreements and Transfers took place no later than February 2000. Therefore, Debtor was not subject to the provisions of the CCC listed under CCC § 2115(b) at the time the Agreements and Transfers occurred. Accordingly, Movants are entitled to judgment on the Seventh, Tenth, Eleventh, and Twelfth Claims, to the extent brought under CCC § 2115.

2. <u>The Internal Affairs Doctrine</u>

A California court describes the internal affairs doctrine as:

> [A] conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs-matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders-because otherwise a corporation could be faced with conflicting demands. States normally look to the State of a business' incorporation for the law that provides the relevant corporate governance general standard of care.

<u>State Farm Mut. Auto. Ins. Co. v. Superior Court</u>, 114 Cal. App. 4th 434, 442 (2003) (quoting <u>Edgar v. MITE Corp.</u>, 457 U.S. 624, 645 (1982) and <u>Atherton v. FDIC</u>, 519 U.S. 213, 224 (1997)). "In general, courts in California follow this rule and apply the law of the state of incorporation in considering claims relating to internal corporate affairs." <u>In re Sagent Tech., Inc.</u>, 278 F. Supp 2d 1079, 1087 (N.D. Cal. 2003). Indeed, the internal affairs doctrine, as applied to director liability, has been codified in California. <u>See</u> Cal. Corp. Code § 2116.

This does not mean that California has no role in governing the conduct of foreign corporations. Clearly, California law applies to conduct unrelated to the internal affairs of a foreign corporation. <u>See</u> <u>Valtz v. Penta Inv. Corp.</u>, 139 Cal. App. 3d 803, 807 (1983) (applying California law to a shareholder's demand to inspect a foreign corporation's records and noting that such activity is not an internal corporate affair); <u>Western Air Lines, Inc. v. Sobieski</u>, 191 Cal. App. 2d 399, 409-10 (1961) (holding

that a foreign corporation must comply with California securities laws when entering into stock transactions with California residents and noting that such activity is not an internal affair). Additionally, California law may apply to the internal affairs of a foreign corporation under a specific statute. See Havlicek v. Coast-to-Coast Analytical Servs., Inc., 39 Cal. App. 4th 1844 (1995) (applying California law to a director's right to inspect a foreign corporation's records under CCC § 1602); Wilson v. Louisiana-Pacific Res., Inc., 138 Cal. App. 3d 216 (1982) (rejecting a constitutional challenge to CCC § 2115 as applied to a foreign corporation).

Here, Debtor is a foreign corporation incorporated in Delaware. Trustee does not dispute that the Agreements and Transfers involve the internal affairs of Debtor. Additionally, as discussed above, the trigger date under CCC § 2115(d) occurred after the Agreements and Transfers took place. Finally, Trustee has not identified any other specific statute in the Complaint applying the CCC to the conduct of a foreign corporation. Therefore, Delaware law governs the Agreements and Transfers, and Movants are entitled to judgment on the Fifth, Seventh, Tenth, Eleventh, and Twelfth Claim, to the extent brought under the CCC.

## V. CONCLUSION

The plain language and practical application of CCC § 2115 show that the term "full income year" as used in subdivision (a) means a full fiscal year or twelve-month period from January 1 to

December 31. Debtor's first full fiscal year was 1999, making January 1, 2001 the trigger date under subdivision (d).

With several statutory exceptions, including CCC § 2115, the law of the state of incorporation governs the internal affairs of a corporation. Here, Debtor was incorporated in Delaware and operated as a foreign corporation in California. Additionally, CCC § 2115 and the provisions listed therein did not apply to Debtor until after the Agreements and Transfers took place. Therefore, Delaware law governs the internal affairs of Debtor during the relevant period, and partial summary judgment on the Fifth, Seventh, Tenth, Eleventh, and Twelfth Claims, to the extent brought under the CCC, is appropriate.

This memorandum opinion shall constitute my findings of fact and conclusions of law.

Dated: April 16, 2004

_____
JOHN E. RYAN
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. SA 00-19215 JR |
| FLASHCOM, INC., | Adv. No. SA 02-1620 JR |
| | Chapter 11 |
| Debtor. | **NOTICE OF ENTRY OF ORDER** |

TO:

DAVID R. WEINSTEIN
WEINSTEIN, EISEN & WEISS LLP
1925 CENTURY PARK EAST, SUITE 1150
LOS ANGELES, CA 90067

ROBERT G. WILSON
COTKIN, COLLINS & GINSBURG
300 SOUTH GRAND AVENUE, 24TH FLOOR
LOS ANGELES, CA 90071

HEATHER L. MAYER
LATHAM & WATKINS
633 WEST FIFTH STREET, SUITE 4000
LOS ANGELES, CA 90071

ROBERT FRANKLIN
MURRAY & MURRAY
19300 STEVENS CREEK BOULEVARD
CUPERTINO, CA 95014

Arthur Marquis
Office of the United States Trustee
411 West Fourth Street, Suite 9041
Santa Ana, CA 92701-8000

You are hereby notified, pursuant to Bankruptcy Rule 7055 and 9022, that a judgment or order entitled **Memorandum Opinion and Order** was entered on ___APR 16 2004___.

I hereby certify that I mailed a copy of this notice to the above-named persons on ___APR 16 2004___.

Dated: APR 16 2004

JON D. CERETTO

By _____
Deputy Clerk

3