

FILED & ENTERED

MAR 15 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gae        DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:12-bk-16351-RK |
| FLASHCOM, INC.,<br>a California corporation, | Chapter 11 |
| Debtor. | Adv. No. 2:12-ap-01339-RK |
| CAROLYN A. DYE,<br>Liquidating Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>ANDRA SACHS;<br>COMMUNICATIONS VENTURES III,<br>L.P.; COMMUNICATIONS<br>VENTURES III CEO &<br>ENTREPRENEURS FUNDS L.P.;<br>MAYFIELD IX, a Delaware Limited<br>Partnership; MAYFIELD<br>ASSOCIATES FUNDS IV, a Delaware<br>Limited Partnership; DAVID<br>HELFRICH; TODD BROOKS;<br>BRADFORD SACHS; RICHARD<br>RASMUS; and KEVIN FONG,<br><br>Defendants. | SUPPLEMENTAL MEMORANDUM<br>DECISION RE: PLAINTIFF'S MOTION<br>FOR ENTRY OF JUDGMENT AND<br>ANDRA SACHS DEFENDANTS' MOTION<br>FOR RELIEF FROM ORDERS<br>PURSUANT TO FED. R. CIV. P. 60 |

In the original Memorandum Decision re: Plaintiff's Motion for Entry of Judgment

and Andra Sachs Defendants' Motion Pursuant to Fed. R. Civ. P. 60, filed and entered on

1  March 5, 2013 as Docket No. 634, the court ruled that it would grant the motion of

2  defendants Andra Sachs, Ashby Enterprises and Max-Singer Partnership (collectively

3  known as the "Andra Sachs Defendants") for relief under Rule 60 of the Federal Rules of

4  Civil Procedure.  (In this supplement, the Andra Sachs Defendants are also referred to as

5  "Defendants," and Andra Sachs is sometimes referred to as "Andra".)  However, in its

6  original memorandum decision, the court did not address the argument of plaintiff

7  Carolyn Dye, Liquidating Trustee ("Trustee") that such relief is precluded by the United

8  States Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S.

9  260, 130 S.Ct. 1367 (2010).  By this Supplemental Memorandum Decision, the court

10  addresses and rejects the Trustee's argument.

11        The court concludes that this case is not controlled by *Espinosa* because there are

12  extraordinary circumstances that warrant relief under Rule 60(b)(6), which the court

13  enumerates here.  In her papers, Trustee argues that, pursuant to *Espinosa*, the Global

14  Settlement Agreement is *res judicata* because the Andra Sachs Defendants never

15  appealed two settlement orders approving the Global Settlement Agreement: the *Order*

16  *Authorizing Compromise of Controversies with Andra Sachs and Estate of Bradford H.*

17  *Sachs*, entered by this court on November 1, 2005 (the "California Settlement Order"),

18  and the *Order Ruling on Motion to Compromise Controversy and Allowing Claims #1 and*

19  *#5 as Filed and Allowing Claim #3 in Reduced Amount of $6,000,000*, entered by the

20  United States Bankruptcy Court for the Southern District of Florida on June 14, 2006 (the

21  "Florida Settlement Order").  *Plaintiff's Opposition to Motion of Defendants Andra Sachs,*

22  *Ashby Enterprises and Max-Singer Partnership for Relief from Orders and Judgments*

23  *Pursuant to Rule 60 of the Federal Rules of Civil Procedure ("Trustee's Rule 60*

24  *Opposition"),* filed on December 4, 2012, at 5-6, 11-13; *see also, Plaintiff's Reply*

25  *Memorandum in Support of Motion for Entry of Judgment Establishing Liability of Andra*

26  *Sachs, Ashby Enterprises and Max-Singer Partnership; Declaration of David R.*

27  *Weinstein ("Trustee's Reply Memorandum"),* filed on May 23, 2012, at 4-8.  Trustee

28  argues that, even if the Global Settlement Agreement violates California law—which the

1   Trustee disputes—nevertheless, these settlement orders are *res judicata* and bind the

2   parties, precluding a Rule 60 challenge.  *Id.*

3       In *Espinosa*, the Supreme Court considered a debtor's chapter 13 plan in which he

4   proposed to repay only the principal of his student loan debt—held by United Student Aid

5   Funds, Inc. ("United")—over the life of the plan.  130 S.Ct. at 1373-1374.  The plan

6   provided that, upon completion of plan payments, the accrued interest on the student

7   loans would be discharged.  *Id.*  United received notice of the plan, but did not object to

8   the proposed discharge of the accrued interest.  *Id.* at 1374.  The bankruptcy court

9   confirmed the plan without holding an adversary proceeding or making a finding of undue

10  hardship, which is required under 11 U.S.C. §§ 523(a)(8) and 1328(a).  *Id.*

11  Subsequently, after completing plan payments, the debtor received his Chapter 13

12  bankruptcy discharge and filed a motion requesting that the bankruptcy court direct

13  United to cease making collection attempts on the accrued interest.  United filed a cross-

14  motion pursuant to Federal Rule of Civil Procedure 60(b)(4), seeking to set aside as void

15  the confirmation order because the plan authorizing discharge of the student loan interest

16  violated 11 U.S.C. § 523(a)(8) and 1328(a).  *Id.*  The bankruptcy court denied the Rule 60

17  motion, and the Ninth Circuit held that the bankruptcy court had at most made a legal

18  error in the Chapter 13 plan confirmation order that United could have successfully

19  appealed; however, such a challenge to a legal error was not grounds for reconsideration

20  pursuant to Rule 60(b)(4), and the Ninth Circuit ultimately ruled in favor of debtor that the

21  plan confirmation order was *res judicata.  Id.* at 1375.  The Supreme Court affirmed.  *Id.*

22  at 1382.

23      In *Espinosa*, the Supreme Court explained that "[f]ederal courts considering Rule

24  60(b)(4) motions that assert a judgment is void because of a jurisdictional defect

25  generally have reserved relief only for the exceptional case in which the court that

26  rendered judgment lacked even an 'arguable basis' for jurisdiction."  *Id.* at 1377, *citing*,

27  *Nemaizer v. Baker*, 793 F.2d 58, 65 (2nd Cir. 1986).  A judgment is thus not void "'simply

28  because it is or may have been erroneous.'"  *Espinosa*, 130 S.Ct. at 1377, *quoting*, *Hoult*

1     *v. Hoult*, 57 F.3d 1, 6 (1st Cir. 1995) and 12 J. Moore, et al., *Moore's Federal Practice,*

2     § 60.44[1][a], at 60-150 to 60-151 (3d ed. 2007).  The Supreme Court in *Espinosa* noted

3     the balance struck by Rule 60(b)(4) between "the need for finality of judgments and the

4     importance of ensuring that litigants have a full and fair opportunity to litigate a dispute."

5     *Espinosa*, 130 S.Ct. at 1380.  Thus, to some degree, Trustee's reliance on *Espinosa* is

6     not misplaced to argue in opposition to Defendants' Rule 60 motion that relief from

7     judgment is not appropriate under Rule 60(b)(4) on grounds that the judgment is void

8     simply because it may have been erroneous.  *Id.* at 1377; *see also, Notice of Motion and*

9     *Motion of Defendants Andra Sachs, Ashby Enterprises and Max-Singer Partnership for*

10    *Relief from Order and Judgments Pursuant to Rule 60 of the Federal Rules of Evidence*

11    *("Defendants' Rule 60 Motion"),* filed on November 21, 2012, at 9; *Trustee's Rule 60*

12    *Opposition* at 5-6.

13        This court is of the view that *Espinosa* is not dispositive of the instant case,

14    because this case involves the application of Rule 60(b)(6) of the Federal Rules of Civil

15    Procedure.  Rule 60(b)(6) states in pertinent part:  "On motion and just terms, the court

16    may relieve a party . . . from a final judgment, order, or proceeding for the following

17    reasons: . . . (6) any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6); *see also,*

18    Fed. R. Bankr. P 9024 (Fed. R. Civ. P. 60 generally applies to bankruptcy cases with

19    specific exceptions not applicable here); 3 Jones & Rosen, *Rutter Group Practice Guide:*

20    *Federal Civil Trials and Evidence,* ¶ 20:400 at 20-76 (2012).  This provision "gives the

21    district court power to vacate judgments 'whenever such action is appropriate to

22    accomplish justice.'"  *United States v. Sparks,* 685 F.2d 1128, 1130 (9th Cir. 1982),

23    *quoting, Klapprott v. United States,* 335 U.S. 601, 615 (1949).  "In order to obtain such

24    relief from a judgment, however, 'extraordinary circumstances' must exist."  *United States*

25    *v. Sparks,* 685 F.2d at 1130, *citing inter alia, Ackerman v. United States,* 340 U.S. 193,

26    199 (1950).  Rule 60(b)(6) is to be "used sparingly" in order to "prevent manifest injustice"

27    when "extraordinary circumstances [prevent] a party from taking timely action to prevent

28    or correct an erroneous judgment."  *United States v. Alpine Land & Reservoir Co.*, 984

F.2d 1047, 1049 (9th Cir. 1993), *citing, Klapprott v. United States, supra; Ackerman v. United States, supra;* and *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 857, 864 (1988); *see also, Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir. 2007).

In determining whether such extraordinary circumstances exist, the court must balance the public policy favoring the finality of judgments against the "incessant command of the court's conscience that justice be done in light of all the facts."  3 Jones & Rosen, *Rutter Group Practice Guide: Federal Civil Trials and Evidence,* ¶ 20:402 at 20-77, *citing*, *Blue Diamond Coal Co. v. Trustees of UMWA Combined Benefit Fund*, 249 F.3d 519, 529 (6th Cir. 2001); *see also,* 11 Wright, Miller, Kane and Marcus, *Federal Practice & Procedure,* § 2860 (3rd ed. 2012) ("[Rule 60] attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done."), *citing inter alia, Delay v. Gordon,* 475 F.3d at 1044 (quoting treatise).  For example, Rule 60(b)(6) should not be invoked as a substitute for appeal where a litigant bypassed a right to appeal for tactical reasons.  *United States v. Alpine Land & Reservoir Co.*, 984 F.2d at 1049, *citing, Ackerman v. United States, supra.*

In this case, the court finds that there are exceptional circumstances warranting relief from the operation of the California and Florida settlement orders approving the Global Settlement Agreement.  These exceptional circumstances stem not so much from the orders themselves, but the post-judgment enforcement of the orders by Trustee.  It appears that the parties in their briefing and the court in its initial memorandum decision conflate the final orders themselves and the post-judgment enforcement of the orders by the Trustee.

On July 11, 2002, Trustee filed the instant adversary proceeding against the Andra Sachs Defendants and other defendants, including the so-called VC Defendants, to recover an allegedly preferential transfer of $9 million by debtor, Flashcom, Inc., to Andra Sachs.  *Stipulation of Facts Concerning Plaintiff's Motion for Entry of Judgment Establishing Liability of Andra Sachs, Ashby Enterprises and Max-Singer Partnership ("Stipulation of Facts"),* filed on June 21, 2012, at 2, ¶ 2.  The Andra Sachs Defendants

1   and Trustee agreed to settle their dispute in this adversary proceeding and with the

2   trustee in the adversary proceeding in the Florida bankruptcy case of Bradford Sachs,

3   Andra Sachs's ex-spouse, as reflected in a written settlement agreement referred to as

4   the "Global Settlement Agreement."  *Id.* at 3, ¶¶ 3-4.  The Global Settlement Agreement

5   was approved by this court in this adversary proceeding and another bankruptcy court in

6   the Florida adversary proceeding as reflected in the California and Florida Settlement

7   Orders.  *Id.* at 3, ¶¶ 4-5 and Exhibit 2 attached thereto.

8        The Global Settlement Agreement provided that the liability of the Andra Sachs

9   Defendants would be settled on the condition that Andra Sachs make three separate

10  settlement payments, that is, (1) a first payment of $250,000 on the so-called Approval

11  Date; (2) a second payment of $500,000 within 6 months of the Approval Date; and (3) a

12  third payment under the so-called "Dye Buyout Option" of either: (a) $50,000 if within 36

13  months of the Approval Date Trustee received at least $2 million from the remaining

14  defendants (i.e., the VC Defendants) in the adversary proceeding, and such $50,000

15  payment would be due within 60 days after Trustee receives, and notifies Andra Sachs,

16  Trustee has received at least $2 million from the other defendants; or (b) $62,500 if

17  Trustee's recovery against the other defendants is less than $2 million (including no such

18  recovery at all) and such $62,500 payment shall be due within the earlier of (i) the end of

19  the 37th month after the Approval Date or (ii) such time as there is a final resolution of the

20  adversary proceeding by entry of a judgment or an order approving a settlement

21  agreement.  *Global Settlement Agreement* at 4-5, 10-11, *attached as Exhibit 2 to*

22  *Stipulation of Facts.*[1]  The Global Settlement Agreement provided that the Andra Sachs

23

24  _____

[1]   The specific language of the terms governing the third payment is as follows:

    10.     Dye Buyout Option

25      a.     The payment due under the Dye Buyout Option shall be $50,000 if, within 36

26             months of the Approval Date, Dye receives at least $2,000,000 from the remaining
               defendants in the in the [sic] Dye v. Andra Adversary Proceeding (i.e.,
               Communications Ventures III, L.P., Communications Ventures III CEO &

27             Enterpreneurs Funds L.P., Mayfield IX, Mayfield Associated Funds IC, David
               Helfich, Todd Brooks, Bradford Sachs, Richard Rasmus and Kevin Fong

28

1   Defendants would settle their liability in full for payments totaling either $800,000 or

2   $812,500.  *Id.*; *see also, Declaration of Andra Sachs in Support of Defendants Andra*

3   *Sachs, Ashby Enterprises and Max-Singer Partnership from Relief from Orders and*

4   *Judgments Pursuant to Rule 60 of the Federal Rules of Civil Procedure ("Andra Rule 60*

5   *Declaration"),* filed on November 21, 2012, at 2.

6         The first two payments are not at issue because the parties acknowledge that in

7   2006, Andra Sachs made the first two settlement payments totaling $750,000 to the

8   Florida bankruptcy trustee as called for pursuant to the Global Settlement Agreement.

9   *Stipulation of Facts* at 3, ¶ 7; *see also, Sachs Rule 60 Declaration* at 3.  The third

10  settlement payment governed by the Dye Buyout Option in the Global Settlement

11  Agreement is the term of that agreement, which is at the center of the dispute between

12  the parties.

13        The triggering of the third settlement payment is tied to the so-called Approval

14  Date, which does not refer to a specific date by day and year, but is a defined formulaic

15  term referring to other trigger dates:

16        The "Approval Date" will be the first business day following the tenth day
          after the entry of the later of the two orders of the respective Bankruptcy
17        Courts approving this Agreement, so long as no stay of either of those
          orders has been entered prior to that date, provided that an irrevocable
18        escrow of $500,000 has been made with Shulman Hodges & Bastian LLP
          (the "Escrow Agent") prior to the hearing on the settlement by Andra.
19

20  *Global Settlement Agreement* at 3-4, ¶ 2, *attached as Exhibit 2 to Stipulation of Facts.*

21
    _____

22              (collectively, "Other Defendants").  Such $50,000 payment shall be due within 60
                months after Dye receives, and notifies Andra that she has received, at least
23              $2,000,000 from the Other Defendants.

24        b.    The payment due under the Dye Buyout Option shall be $62,500 if Dye's recovery
                against the Other Defendants within 36 months of the Approval Date is less than
25              $2,000,000 (including if there is no such recovery at all).  Such $62,500 payment
                shall be due within the earlier of (i) the end of the 37th month after the Approval
26              Date or (ii) such time as there is a final resolution of the Dye v. Andra Adversary
                Proceeding by entry of a judgment or an order approving a settlement agreement.

27  *Global Settlement Agreement* at 10-11, *attached as Exhibit 2 to Stipulation of Facts.*  The court quotes the
    provisions relating to the so-called Dye Buyout Option verbatim because in the court's view, the exact
28  language of the provisions need to be read slowly and carefully in order to be fully understood.

1   The so-called Approval Date referred to in the Global Settlement Agreement was not

2   known when the Global Settlement Agreement was entered into.  *Stipulation of Facts* at

3   3, ¶ 5.  Andra Sachs signed the Global Settlement Agreement on behalf of the Andra

4   Sachs Defendants on an unspecified date in September 2005.  *Global Settlement*

5   *Agreement* at 18 (signature page), *attached as Exhibit 2 to Stipulation of Facts.*  Andra

6   Sachs signed the Global Settlement Agreement on behalf of the Andra Sachs

7   Defendants on an unspecified date in September 2005.  *Id.*

8       This court entered the California Settlement Order approving the Global

9   Settlement Agreement on November 1, 2005, and the Florida bankruptcy court entered

10  the Florida Settlement Order approving the Global Settlement Agreement on June 14,

11  2006. *Stipulation of Facts* at 3, ¶ 6.  The parties now agree that the Approval Date of the

12  Global Settlement Agreement was June 26, 2006.  *Id.*

13      The Global Settlement Agreement further provided that in the event that the Andra

14  Sachs Defendants "do not exercise the Dye Buyout Option by making the required

15  payment prior to its execution," Trustee may record a judgment for avoidance of $9

16  million transfer, may file, have entered and record a judgment of liability against the

17  Andra Sachs Defendants for the $9 million transfer and may proceed to execute on the

18  assets of these defendants.  *Global Settlement Agreement* at 4-5, 10-11, *attached as*

19  *Exhibit 2 to Stipulation of Facts.*

20      During the negotiation of the Global Settlement Agreement, the Andra Sachs

21  Defendants were represented by counsel, James Bastian, of the law firm of Shulman,

22  Hodges & Bastian LLP.  *Declaration of David R. Weinstein attached to Plaintiff's Reply*

23  *Memorandum in Support of Motion of Judgment Establishing Liability ("Weinstein Reply*

24  *Declaration"),* filed on May 23, 2012, at 14.  Trustee was represented by David R.

25  Weinstein, then of the law firm of Weinstein, Eisen & Weiss LLP.  *Id.* and Exhibit 8

26  attached thereto.

27      At the time Andra Sachs entered into the Global Settlement Agreement, she was

28  ready, willing and able to pay the remaining $50,000 or $62,000 of the settlement amount

8

1   and would have been able to do so at the time the court approved the settlement.

2   *Supplemental Declaration of Andra Sachs in Opposition to Plaintiff's Motion for Entry of*

3   *Judgment,* filed on September 6, 2012, at 2.  Andra Sachs told her attorney, Bastian, that

4   she wanted to end this litigation "once and for all" and preferred to pay the entire

5   settlement and be done with it.  *Id.*  Bastian advised Andra Sachs that he had offered this

6   to counsel for Trustee, but was told that Trustee would not permit the Global Settlement

7   Agreement to require payment of the $50,000 or $62,500 at the time of the settlement

8   approval and insisted on including the Dye Buyout provision in the Global Settlement

9   Agreement which would provide for her payment of this amount in the future.  *Id.*  Bastian

10  advised Andra Sachs that he was advised by counsel for Trustee that it was not Trustee's

11  intention to hold her or the other settling defendants liable for the $9 million specified in

12  the liability judgment, but that the intent was instead to use the liability judgment to help

13  him (i.e., counsel for Trustee) to obtain a judgment against the other defendants.  *Id.*

14  According to Andra Sachs, she and the other settling defendants agreed to the Dye

15  Buyout Option provision in the Global Settlement Agreement in reliance with the above-

16  stated intent of Trustee.  *Id.* [2]

17

18  [2]   Andra's version of the facts on Trustee's intent on enforcement of the settlement is plausible because
    Trustee attempted to use the stipulated judgment between Trustee and her, her husband and their affiliated

19  entities to set aside the $9 million transfer as preferential under 11 U.S.C. § 547 against the other non-
    settling defendants, but the court held that the stipulated judgment avoiding the transfer could not used by

20  Trustee to deprive the nonsettling defendants of their constitutional due process rights to defend against
    the preferential transfer and avoidance claims.  *Dye v. Sachs (In re Flashcom, Inc.),* 361 B.R. 519, 522-527

21  (Bankr. C.D. Cal. 2007) (Ryan, J.).  This ruling is now on appeal before the district court with the court's
    other rulings.  Andra's statements are corroborated by the Bastian Declaration, which the court has ruled

22  as inadmissible settlement discussion statements pursuant to Rule 408 of the Federal Rules of Evidence
    for purposes of determining liability on Trustee's Judgment Motion.  *Declaration of James C. Bastian,*

23  attached to *Opposition of Defendants Andra Sachs, Ashby Enterprises and Max-Singer Partnership to
    Plaintiff's Motion for Entry of Judgment Establishing Liability of Andra Sachs, Ashby Enterprises and Max

24  Singer Partnership,* filed on May 16, 2012.  However, the court does not see why Bastian Declaration is not
    admissible for other purposes, such as Andra's reliance in entering into the settlement for purposes of

25  Defendants' Rule 60 motion.  However, the court notes that there is a factual dispute between the Bastian
    Declaration and the Weinstein Reply Declaration as to statements of Trustee's intention, which the court

26  need not resolve since the court does not depend on this conflicting evidence in ruling upon the Rule 60
    motion based on the unenforceability and unconscionability of the so-called Dye Buyout Option and

27  Trustee's failure to give reasonable notice of the amount due on the last settlement payment rendering
    Defendants unable to perform.

28

According to Weinstein, he did not tell Bastian that Trustee did not intend to use

the liability judgment to hold Andra Sachs liable for damages in the full principal amount

of $9 million.  *Weinstein Reply Declaration* at 14, ¶ 4.  However, Weinstein stated:

> I did, however, tell Mr. Bastian that I did not <u>expect</u> that the Trustee would recover the full principal amount of $9,000,000 from Ms. Sachs (or Ashby Enterprises or Max-Singer Partnership), not because the Trustee had no such intent but because we had agreed to (or were discussing) a compromise formulation under which Ms. Sachs would entirely control her own ability to take advantage of the "Dye Buyout Option" and that I anticipated that, given expected efforts of Ms. Sachs and (or) Mr. Bastian, the Trustee was unlikely to eventually recover the $9,000,000 from Ms. Sachs.

*Id.* (emphasis in original).  Weinstein also told Bastian that:

> . . . because an extended period was going to pass before Ms. Sachs would have to make the Buyout payment, the Trustee and I specifically did <u>not</u> want to have the obligation to remember to notify Ms. Sachs and make a demand.

*Id.* at 15, ¶ 5 (emphasis in original).

Weinstein said that Bastian had told him that Andra Sachs was a difficult client and

that Bastian did not want to represent her after the settlement was approved.  *Id.*  In

response to these comments of Bastian, Weinstein responded:

> . . . in effect, that since that meant it was probably going to be true that we would not be able to give an effective notice to Mr. Bastian, but instead would have to search for Ms. Sachs, it was even more certain that we would not agree to a notice-and-demand feature of the Buyout payment (unless we were informing her of a modified obligation) and that burden would be on Ms. Sachs.

*Id.*  According to Weinstein, Bastian agreed, and "that provision [for no notice] was clearly

written into the Global Settlement Agreement."  *Id.*

At the hearing on the motion to approve the Global Settlement Agreement before

this court, Bastian represented the Andra Sachs Defendants told the court that the

settlement was in the best interests of the creditors of the bankruptcy case because the

settlement payments were secured by collateral, that there was a stipulated judgment for

recovery of the transfer under 11 U.S.C. § 550 that "if she [Andra Sachs] doesn't perform,

1  they can come and record, and then pursue all of her assets, and all other assets that are

2  available" and that "[s]o, if she happens to default, which will happen over my dead body,

3  there's substantial collateral protection as well." *Transcript of Proceedings Before the*

4  *Honorable John E. Ryan, United States Bankruptcy Judge, September 27, 2008, In re*

5  *Flashcom, Inc., Case No. SA 00-19215-JR, attached as Exhibit 12* at 21 *to  Plaintiff's*

6  *Supplemental Reply Memorandum in Support of Motion for Entry of Judgment,* filed on

7  October 8, 2012, at 33.

8        On September 23, 2011, the court entered its memorandum decision resolving the

9  remaining claims in the adversary proceeding against the other defendants, ruling that

10  Trustee take nothing on her claims.  *Stipulation of Facts* at 3, ¶ 8. [3] Trustee did not

11  recover any money from the defendants in the adversary proceeding other than the

12  Andra Sachs Defendants,[4] and as a result, the following dates applied with respect to the

13  "Dye Buyout Option" in the Global Settlement Agreement: (1) July 31, 2009 marked the

14  end of the 37th month after the Approval Date under paragraph 10(b)(1) of the Global

15  Settlement Agreement; and (b) September 23, 2011, the date of the final order disposing

16  of the remaining claims in the adversary proceeding, marked the date of the final

17  resolution of the adversary proceeding under paragraph 10(b) of the Global Settlement

18  Agreement.  *Id.* at 4, ¶ 9.

19        Because Trustee did not receive at least $2 million from the other defendants in

20  the adversary proceeding by June 26, 2009, 36 months after the Approval Date,

21  paragraph 10 of the Global Settlement Agreement operate to call for the Andra Sachs

22

23  [3]   The judgment on the memorandum decision and prior rulings of the court in this adversary proceeding

24  are currently on appeal before the district court.

[4]   The record before this court on the pending motions is silent as to what Trustee otherwise collected on

25  her large claim filed in the Florida bankruptcy court in Bradford Sachs's bankruptcy case.   The Global
Settlement Agreement provided that Trustee's claim in the Florida bankruptcy case would be allowed in the

26  amount of $6 million and Trustee's other claims were to be allowed as filed with the Florida bankruptcy
trustee to seek court approval to make an interim distribution on these claims.  *Global Settlement*

27  *Agreement* at 13-14, ¶ 14(e), attached as *Exhibit 2 to Stipulation of Facts; see also, Florida Settlement
Order* at 3, attached as *Exhibit 4 to Stipulation of Facts.*

28

Defendants to pay the final settlement payment of $62,500 to Trustee by July 31, 2009, the 37th month after the Approval Date. *Id.* at 4, ¶ 10.

Trustee did not demand payment, notify or otherwise attempt to communicate with any of the Andra Sachs Defendants or their counsel about the Global Settlement Agreement in June 2009, or after that, until January 2012 when Trustee's counsel, Weinstein, wrote an email to Bastian. *Id.* at 4, ¶ 11. Bastian no longer represented the Andra Sachs Defendants and so advised Weinstein. *Id.*

After Andra Sachs received service of Trustee's Judgment Motion in March 2012, she and her counsel offered, more than once in March 2012 and thereafter, to deliver $62,500 to Trustee, intending that such payment would satisfy the obligations of the Andra Sachs Defendants under the Global Settlement Agreement. *Stipulation of Facts* at 4, ¶ 12; *Andra Rule 60 Declaration* at 3.

After Andra Sachs made the first two settlement payments, she did not "receive any notice whatsoever from Bastian, Trustee Dye or her counsel regarding the $62,500 Settlement Payment until I received the Judgment Motion in late March 2012." *Sachs Rule 60 Declaration* at 3. She further stated in her Rule 60 Declaration: "To be clear, I did not receive a telephone call, an email, or hard-copy letter regarding the $62,500 Settlement Payment, the efforts to collect from the other, non-settling defendants, or the status of the Adversary Proceedings for approximately 5 years." *Id.* (emphasis in original).

In her declaration in opposition to Trustee's Judgment Motion, Andra Sachs explained what arrangements she made regarding the third settlement payment under the so-called Dye Buyout Option:

> In July of 2006 after several years of costly litigation regarding Flashcom and the Trustee Carolyn Dye and Robert Furr, Andra Sachs ("SACHS") entered into a global settlement agreement with Carolyn Dye, Weinstein, Weiss & Ordubegian LLP, and Robert Furr Trustee. ("SACHS") Attorney of record was Jim Bastian from Shulman, Hodges, Bastian LLP. The settlement agreement required 2 payments. The first payment of $750,000 was made shortly after the agreement was signed. It was ("SACHS") understanding that the 2nd (last and final payment of

either $50,000 or $62,500) was due when the case against the Venture Capitalists (Mayfield, David Helfich, Todd Brooks, and Kevin Fong), (herein referred to as the VC's) was settled. ("SACHS") was informed ("SACHS") counsel, Jim Bastian, that ("SACHS") would like to put the last payment in a trust account at his firm to prevent any miscommunications or problems. He told ("SACHS") that it was not necessary, and he would advise ("SACHS") when the case was settled with the VC's and either $50,000 or $65,000 payment was due. Over the next few years, ("SACHS") spoke with Mr. Bastian on several occasions and asked him if the case with the VC's was settled, and when would the money be due. His response was that he had not heard from David Weinstein or Carolyn Dye and he would let ("SACHS") know when he did. ("SACHS") understood that the payment of $62,500 or $50,000.00 was tied into whether or not Trustee Dye received at least 2 million dollars from the VC's. It was ("SACHS") understanding that this case had to be settled in order to make the final payment. Several months ago, ("SACHS") recently found out that the case against the VC's did not even settle until September 2011. The confusing part of the settlement agreement was exactly how much was to be paid, when, and to whom, and where was the payment to be made? The funds have always been available to be paid and ("SACHS") would have paid them immediately if asked by either Mr. David Weinstein, Carolyn Dye, or Jim Bastian.

*Declaration of Andra Sachs in Opposition to Plaintiff's Motion for Entry of Judgment Establishing the Liability of Andra Sachs, Ashby Enterprises and Max-Singer Partnership ("Sachs Judgment Motion Declaration"),* filed on July 26, 2012, at 2-3. In stating her concern about the last payment, Andra Sachs further stated:

("SACHS ") would have never risked the settlement over the last payment. The last payment of $62,500 or $50,000 was less than 10% of the settlement amount of $750,000 that and ("SACHS") paid in full. ("SACHS") wanted more than anything to complete the agreement and move on and never would have jeopardized this settlement agreement based on one last payment. ("SACHS") never knew how much to send, where to send it, and who to make the check payable to. Mr. Weinstein worked at several law firms over the years, and ("SACHS") never once received anything in the mail to notify me of his change of address and where to send the funds and the payment amount. The agreement was very unclear as to how and where to send the funds due. Given the confusing nature of the settlement agreement, ("SACHS") never would have been able to perform. If Mr. Weinstein would have sent ("SACHS") just one demand, via email, letter, phone, call, telegram, or any method of communication, ("SACHS") would have paid the amount due immediately. ("SACHS") am shocked and horrified that Mr. Weinstein or Carolyn Dye would not accept the last payment due on the settlement agreement. The

penalty Carolyn Dye and Mr. Weinstein are trying to impose upon ("SACHS"), Ashby, and Max Singer are not only unconscionable, but so far out of proportion considering the payment of $750,000 was already made to settle the case.

*Id.* at 3-4.

In this case, by her motion to enter judgment, Trustee seeks to enforce the liquidated damages clause of the Global Settlement Agreement, which constitutes an unreasonable and unenforceable penalty in violation of California law.  In the original memorandum decision, the court has determined that the liquidated damages clause to be an unreasonable and unenforceable penalty because it bore no relationship to the range of actual damages that the parties could have anticipated would flow from a breach of the settlement agreement.  *Memorandum Decision* at 6-11, *citing, California Civil Code,* § 1671(b); *Greentree Financial Group, Inc. v. Execute Sports, Inc.*, 163 Cal. App. 4th 495 (2008); *Eising v. Locke (In re Wescot International, Inc.*), 236 B.R. 27 (N.D. Cal. 1999).  In the original memorandum opinion, the court concluded that it may rely upon California law in interpreting the settlement contract in this case, the Global Settlement Agreement.  *Memorandum Decision* at 7, *citing*, *In re Wescot International, Inc., 236 B.R. at 33 n. 3 and *Global Settlement Agreement* at 15-16, ¶ 17, attached as *Exhibit 2 to Stipulation of Facts* (incorporating California Civil Code, § 1542, to apply to releases of liability under agreement).  In this court's view, the applicable law governing the interpretation of the settlement contract in this case is California law because California is the forum state in which this bankruptcy court sits on a case involving a California debtor, Flashcom, Inc., the events that gave rise to the settlement related to alleged transfers by the California debtor, the parties are California parties (except for Bradford Sachs, then resident in Florida, but previously in California, and the Florida bankruptcy trustee) and were represented by California counsel, the contract incorporated provisions of California law and the contract does not otherwise contain a "choice of law" provision.  *See*

1    *Complaint,* filed on July 11, 2002; *Global Settlement Agreement*, attached as *Exhibit 2 to*

2    *Stipulation of Facts; see also, In re Wescot International, Inc.,* 236 B.R. at 33 n. 3.

3        California Civil Code, § 1671(b), provides in pertinent part with exceptions not

4    applicable here that "a provision in a contract liquidating the damages for the breach of

5    the contract is valid unless the parties seeking to invalidate the provision establishes that

6    the provision was unreasonable under the circumstances existing at the time the contract

7    was made."  "A liquidated damages provision will be generally considered unreasonable,

8    and hence unenforceable under section 1671(b), if it bears no reasonable relationship to

9    the range of actual damages that the parties could have anticipated from a breach."

10   *Ridgley v. Topa Thrift & Loan Association,* 17 Cal. 4th 970, 977 (1998); *see also,* 1

11   Witkin, *Summary of California Law,* § 537 at 582 (10th ed. 2005 and 2012 Supp.).  "The

12   amount set as liquidated damages 'must represent the result of a reasonable endeavor

13   by the parties to estimate a fair average compensation for any loss that may be

14   sustained.'"  *Ridgley v. Topa Thrift & Loan Association,* 17 Cal. 4th at 977, *quoting,*

15   *Garrett v. Coast & Southern Fed. Sav. & Loan Assn.,* 9 Cal. 3d at 739.

16       Under the liquidated damages clause, Defendants are liable for a judgment in the

17   amount of $9 million for late payment of the remaining settlement payment of $62,500, or

18   in other words, the penalty of 144 times the amount due under the settlement for being

19   late.  *Global Settlement Agreement* at 10-11, ¶ 10(c), *attached as Exhibit 2 to Stipulation*

20   *of Facts*.  This multiple is far greater than the three times payment liquidated damages

21   penalty held by the court in *Greentree* to be unreasonable and unenforceable.  168 Cal.

22   App. 4th at 500.  The evidence in the record shows that there is no reasonable

23   relationship of the requested $9 million judgment for breaching the settlement agreement

24   to the range of actual damages that the parties could have anticipated from the breach by

25   Defendants here by paying the last settlement payment of $62,500 late.  Trustee has not

26   explained how $9 million is within the range of her actual damages from Defendants' late

27   payment of the remaining unpaid settlement amount of $62,500 assertedly due in June

28   2009, only four years ago.

1   Because the liquidated damages clause of the settlement agreement is an

2   unreasonable and unenforceable penalty, the court determines that the provision is an

3   unconscionable term in the settlement agreement.  California Civil Code, § 1671; *In re*

4   *Wescot International, Inc.*, 236 B.R. at 32-34 and nn. 2-5 (considering a judgment of

5   $1 million for a default of a settlement in the amount of $50,000 "precisely a subterfuge

6   for usury" (internal quotation marks omitted)); *cf.*, *H.S. Perlin Co., Inc. v. Morse Signal*

7   *Devices of San Diego*, 209 Cal. App. 3d 1289, 1300-1302 (1989) (holding that a contract

8   provision which meets the requirements of a valid liquidated damages clause pursuant to

9   California Civil Code, § 1671, *cannot* be an "unconscionable" contract because of such

10  provision).

11   The liquidated damages clause is also unconscionable because under the

12  settlement agreement, Trustee need not give notice to Defendants when the clause is

13  invoked.  Because the liquidated damages clause of the settlement agreement is an

14  unconscionable contractual term, it should not be enforced.  *California Civil Code,*

15  § 1670.5 ("If the court as a matter of law finds the contract or any clause of the contract to

16  have been unconscionable at the time it was made the court may refuse to enforce the

17  contract, or it may enforce the remainder of the contract without the unconscionable

18  clause, or it may so limit the application of the unconscionable clause as to avoid any

19  unconscionable result."); *Restatement (Second) of Contracts*, § 208 (identical language).

20  Defendants seek relief from judgment under Rule 60 of the Federal Rules of Civil

21  Procedure to avoid enforcement of the order approving the settlement agreement

22  containing the unreasonable liquidated damages clause.

23   This is not a case where Defendants engaged in culpable behavior.  Defendants

24  never intended a default and were ready, willing and able to pay the entire settlement

25  amount of $800,000 or $812,500 when the settlement was approved in 2006.

26  Defendants paid the initial payments of $750,000 on time, representing over 90% of the

27  agreed settlement amount.  However, Trustee refused any early payment of the

28  remaining settlement amount of $50,000 or $62,000, insisting that Defendants agree to a

1    complicated payment arrangement which can be aptly described as "labyrinthian,"[5]

2    having the exact amount determined based on the outcome of the litigation against the

3    non-settling defendants.  (Andra Sachs' statements in her declarations that Trustee

4    refused her early payoff of the settlement are not controverted or rebutted by any

5    evidence and are corroborated by a provision in the Global Settlement Agreement that

6    after the Approval Date, Andra Sachs could make a written request to Trustee to talk

7    about paying off the settlement early.  *See Global Settlement Agreement* at 11-12,

8    ¶ 10(d)).  The difference between the alternative final settlement amounts was trivial,

9    $12,500, representing less 2% of the settlement amount of $800,000 or $812,500, or less

10   than two-tenths of one percent (0.2%) of what Trustee now claims is owed by the

11   Judgment of $9,000,000.

12        The court agrees with the statements of Andra Sachs in her declarations that the

13   terms of the Global Settlement Agreement pertaining to the Dye Buyout Agreement were

14   confusing and unclear.  As Andra Sachs said in one of her declarations, "The confusing

15   part of the settlement agreement was exactly how much was to be paid, when, and to

16   whom, and where was the payment to be made?"  *Andra Judgment Motion Declaration* at

17   2.  When the Global Settlement Agreement was entered into in September 2005, no one

18   could know for certain what the final settlement payment would be, and when it should be

19   paid, because it was tied to events to occur in the future, which included the Approval

20   Date, which was also tied to events in the future (approval by the California and Florida

21   bankruptcy courts), and whether Trustee received or recovered payment of $2 million

22   from the other defendants, which was tied to events in the future based in developments

23   in the litigation.  *Global Settlement Agreement* at 3-5, ¶¶ 2-5 and at 10-11, ¶¶ 10(a)-(c),

24

25   ─────────────────
     [5] A "labyrinth" is defined as "something highly intricate or convoluted in character, composition or
     construction." *The Free Online Dictionary*, www.thefreedictionary.com/labyrinth.  In Greek mythology, the
     Labyrinth was an elaborate structure designed and built to hold the Minotaur, a ferocious mythical creature

26   that was half man and half bull.  "[Minos] had Daedalus, a great architect, construct a labyrinth of twisting
     paths, so complex that escape was impossible for the uninstructed.  Here dwelt the Minotaur.  Into the

27   maze the young Athenians were cast, and from the monster no youth or maiden had ever escaped."  Edith
     Hamilton, *Mythology* 150-151 (1942).

28

1    *attached as Exhibit 2 to Stipulation of Facts.*  The fixing of the amount of the last

2    settlement payment and the due date was dependent on the outcome or non-outcome of

3    the Adversary Proceeding against the other defendants and the Trustee's receipt or

4    recovery of funds based on that outcome by a certain date, which in turn was not fixed

5    until the Approval Date, which was itself not fixed until both the California and Florida

6    bankruptcy courts approved the settlement and 10 days elapsed after the latter of those

7    approvals and there was no stay of enforcement of those orders.  *Id.*  Andra Sachs

8    signed the Global Settlement Agreement in September 2005, but the Approval Date was

9    not fixed until June 26, 2006, nine months later.  *Id.* at 18; *Stipulation of Facts* at 3, ¶ 6.

10         Under the so-called Dye Buyout Option in the Global Settlement Agreement, once

11   the Approval Date was fixed, the final settlement payment would be determined based on

12   the outcome or non-outcome of the Adversary Proceeding as of a certain date in the

13   future, which was to be 36 months after the Approval Date.  *Global Settlement*

14   *Agreement* at 3-5, ¶¶ 2-5 and at 10-11, ¶¶ 10(a)-(c), *attached as Exhibit 2 to Stipulation*

15   *of Facts*.  However, the fixing of the amount of the final settlement payment, either

16   $50,000 or $62,500, was dependent not only on the outcome of the Adversary

17   Proceeding against the other defendants as of a certain date (but not the final outcome of

18   that litigation, which did not fix the settlement amount), which was 36 months after the

19   Approval Date, but also, whether Trustee received or recovered $2 million from the other

20   defendants based on the outcome or non-outcome of the litigation as of the certain date

21   of 36 months of the Approval Date.  *Id.*  None of the above-described payment trigger

22   dates tied to the Approval Date were known when Andra Sachs signed the Global

23   Settlement Agreement.  *See Stipulation of Facts* at 3, ¶ 5.

24         Defendants' challenge in timely paying the last settlement payment is

25   compounded because under the so-called Dye Buyout Option in the Global Settlement

26   Agreement, the amount to be paid was dependent on Trustee's receipt or recovery of

27   funds at least $2 million from the other defendants as of a certain date, 36 months after

28   the Approval Date, but the Trustee's receipt or recovery of funds from the other

1  defendants is a matter exclusively within the knowledge of Trustee and her counsel.

2  *Global Settlement Agreement* at 10-11, ¶¶ 10(a)-(c), *attached as Exhibit 2 to Stipulation*

3  *of Facts*.  Paragraph 10(a) of the Global Settlement Agreement states, "The payment due

4  under the Dye Buyout Option shall be $50,000 if, within 36 months of the Approval Date,

5  Dye <u>receives</u> at least $2,000,000 from the remaining defendants . . . .  Such $50,000

6  payment shall be due within 60 days after Dye <u>receives</u>, and <u>notifies</u> Andra that she has

7  <u>received</u>, at least $2,000,000 from the Other Defendants."  *Id.* at 10-11, ¶ 10(a)

8  (emphasis added).  The alternative provision to paragraph 10(a), paragraph 10(b) of the

9  Global Settlement Agreement, states, "The payment due under the Dye Buyout Option

10  shall be $62,500 if Dye's <u>recovery</u> against the Other Defendants in the Dye v. Andra

11  Adversary Proceeding within 36 months of the Approval Date is less than $2,000,000

12  (including if there is no such recovery at all).  Such $62,500 payment shall be due with

13  the earlier of (i) the end of the 37th month after the Approval Date or (ii) such time as

14  there is a final resolution of the Dye v. Andra Adversary Proceeding by entry of a

15  judgment or an order approving a settlement agreement."  *Id.* at 11, ¶ 10(b) (emphasis

16  added).  The court notes the parallelisms between these two alternative clauses in that

17  they speak of Trustee's receipt or recovery of funds from the other defendants rather than

18  any award by the court in the adversary proceeding and the lack of parallelism between

19  the alternative clauses in Trustee's giving notice of receipt in the first alternative and the

20  complete absence of giving notice in the second alternative.  *Id.* at 10-11, ¶¶ 10(a)-(b).

21      However, under paragraph 10(b) of the Global Settlement Agreement for Dye

22  Buyout Option number two, Trustee and her counsel were not going to tell Andra Sachs

23  because they bargained not to tell her by giving her notice of what Trustee had recovered

24  less than $2 million by the 36th month of the Approval Date.  *Id.; Weinstein Reply*

25  *Declaration* at 15, ¶ 5 ("I told Mr. Bastian that because an extended period was going to

26  pass before Ms. Sachs would have to make the Buyout payment, the Trustee and I

27  specifically did <u>not</u> want to have the obligation to remember to notify Ms. Sachs and

28  make a demand.").  What was particularly tricky about the Dye Buyout Option—and

1  apparently intentionally so by Trustee and her counsel—is that under the Global

2  Settlement Agreement, Trustee would give notice to Defendants if she received at least

3  $2 million, but not if she recovers less than $2 million, which was the case here.  *Id.*  As

4  stated earlier, Trustee and her counsel knew and anticipated that Defendants' counsel

5  would not be representing them for much longer and that Trustee and her counsel did not

6  want to deal with Andra Sachs unrepresented.  *Id.*  The inconsistent notice provisions in

7  paragraphs 10(b) and 10(c) of the Global Settlement Agreement  apparently threw off

8  Bastian, Defendants' former counsel, because as Andra Sachs stated in one of her

9  declarations, he advised her just to wait to hear from Trustee about what was owed on

10  the final settlement payment.  *Id.; Andra Judgment Motion Declaration* at 2-3.  However,

11  as indicated in these inconsistent notice provisions, Andra Sachs and her counsel could

12  hear from Trustee and her counsel or not hear.  *Id.*

13      Andra relied upon her counsel, Bastian, to let her know when to make the final

14  settlement payment under the Global Settlement Agreement, but Bastian, who told the

15  court that he would not let Andra Sachs default under the settlement agreement "over

16  [his] dead body" did not tell her when to make the last payment because he no longer

17  represented her.  *Id.*  As noted earlier, Trustee and her counsel, Weinstein, knew that

18  Bastian would not be representing her for much longer after the settlement was approved

19  and intended that no notice be given her when the last payment was due.  *Id.*

20      It is apparent that Trustee and her counsel intended that Andra Sachs as a

21  layperson would have to figure out on her own, soon to be unassisted by counsel, the

22  complicated settlement payment structure in the Global Settlement Agreement and

23  monitor all of the events and trigger dates in the agreement as well as follow the events

24  in the litigation involving the other defendants, all of these tasks to make the last

25  settlement payment, since she "settled."  Also, these tasks were made more difficult

26  because the last settlement payment amount was a moving target given the number of

27  variables to determine the amount.  Perfect timing was required for Andra to make timely

28  payment of the final settlement amount within a short one-month window again marked

20

1   from the Approval Date, which was between the end of the 36th month from that date

2   when the amount would be fixed based on the Trustee's recovery amount within those 36

3   months and the end of the 37th month after that date when the last payment was due.

4        The problem with this arrangement is that Andra was dependent on the Trustee

5   telling her what, when and where to pay for the last settlement payment.  Andra did not

6   know what to pay at the time the settlement was approved because the amount was

7   dependent on whether Trustee received $2 million from the other defendants 36 months

8   into the future.   Andra did not know where to make the last settlement payment because

9   no information was stated in the Global Settlement Agreement where to tender payment.

10  Ironically, Trustee and her counsel expected Andra to communicate with them, but they

11  purposely arranged in the Global Settlement Agreement not to have contact with her by

12  giving her notice of what was due, and when and where to make payment.

13       While Defendants were responsible for paying a final settlement payment of

14  $62,500 to the Trustee by July 31, 2009, based on events that had taken place, Trustee

15  did not demand payment or otherwise communicate at all with Defendants until January

16  2012.  In January 2012, Trustee's counsel, Weinstein, finally telephoned Defendants'

17  prior counsel, Bastian, that payment of the entire $9 million was due.  Not unexpectedly,

18  Bastian told Weinstein that he no longer represented Defendants.  Defendants

19  immediately offered to deliver to the Trustee the remaining settlement payment of

20  $62,500, but Trustee refused payment, demanding instead the penalty amount.

21       These perverse circumstances at best represented a "perfect storm" that

22  Defendants are liable for a judgment 10 times more than what they settled for (or 144

23  times what remained due), which was in violation of applicable state contract law as an

24  unreasonable and unenforceable penalty, or at worst, a "trap for the unwary" set by

25  Trustee and her counsel, who intentionally insisted that the settlement agreement provide

26  for no notice to Defendants of the last settlement payment when it became due and who

27  expected that Defendants would not likely to represented by counsel shortly because that

28  counsel told Trustee's counsel that he would not be representing Defendants after the

21

1  settlement was approved.  The court can discern no rational basis for the complicated

2  settlement payment structure of the Dye Buyout Option of the Global Settlement

3  Agreement, inconsistent notice provisions, and Trustee's failure to give any notice of the

4  amount due for the last settlement payment when the amount was fixed other than to trap

5  the unwary Defendants into paying the full judgment amount.  There is no other legitimate

6  collection purpose for the so-called Dye Buyout Option because Defendants wanted to

7  make an early payment of the full settlement amount as evidenced by their payment of

8  $750,000 of the either $800,000 or $812,500, over 90% of the settlement amount due,

9  and based on Andra Sachs' uncontroverted statements in her declarations, Defendants

10 were ready, willing and able to pay the balance when they entered into the settlement in

11 2005.

12      Although there is a strong policy in favor of finality of the two settlement orders,

13 this court finds that under the extraordinary circumstances of this case, it would be

14 manifestly unjust and inequitable for this court to enforce the unreasonable and

15 unconscionable liquidated damages penalty of $9,000,000—144 times the remaining

16 amount due under the settlement—requested by Trustee.  *See Greentree Financial*

17 *Group, Inc. v. Execute Sports, Inc.*, 163 Cal. App. 4th at 499-500; *cf.*, *H.S. Perlin  Co.,*

18 *Inc. v. Morse Signal Devices of San Diego*, 209 Cal. App. 3d at 1300-1302.  The court

19 emphasizes the inequitable post-judgment circumstances in this case because

20 Defendants were not given notice of the amount due on the last settlement payment

21 based on Trustee's exclusive knowledge of what she received or recovered within 36

22 months of the Approval Date, which made it impossible for Defendants to perform their

23 last remaining obligation under the settlement agreement to make the last payment.

24 Here, Defendants needed to know how much and when to pay the last settlement

25 payment, which were matters solely within Trustee's knowledge, and Trustee was not

26 telling them.

27      Andra's situation is strikingly similar to the facts of *In re Wescot International, Inc.*,

28 236 B.R. at 29-30.  In that case, the chapter 7 trustee had brought suit against the former

1   principal of the debtor, alleging he owed approximately $300,000 to the bankruptcy

2   estate.  236 B.R. at 29.  The parties eventually entered into a settlement, whereby the

3   principal was to give the trustee a promissory note in the amount of $50,000, with an

4   initial payment of $10,000 with the balance due in 24 monthly payments with interest.  *Id.*

5   In the event the principal defaulted, the trustee was entitled to entry of judgment in the

6   amount of $1 million.  *Id.*  The principal defaulted on two payments, though he kept the

7   trustee informed of his efforts to pay.  *Id.*  The trustee, however, sought entry of judgment

8   based on the principal's default.  *Id.*  But the trustee then agreed not to levy on the

9   principal's property to satisfy the judgment on the condition that principal remained

10  current on future payments under the settlement note, and would set aside the judgment

11  once payments were complete.  *Id.*  However, because of circumstances unknown to the

12  principal at the time, he did not remain current, and the trustee sought enforcement of the

13  judgment on default.  *Id.* at 29-30.  The principal and the trustee agreed to compromise

14  the debt again, but a creditor objected to the compromise, purchased the judgment from

15  the trustee and sought to enforce the judgment for the full amount.  *Id.* at 30.  The

16  principal then brought adversary proceedings for declaratory and injunctive relief against

17  the purchaser seeking to block enforcement of the judgment and determine his rights.  *Id.*

18       The bankruptcy court  in *Wescot*  "found that the $1 million judgment amounted to

19  an unreasonable forfeiture out of proportion to the original obligation," and held that the

20  judgment was an unconscionable penalty."  *Id.*  Also, finding that there was at least a tacit

21  agreement between the bankruptcy trustee and the principal to set aside the judgment

22  upon subsequent agreement to allow the principal to cure the initial default and complete

23  payments under the settlement note, the bankruptcy court held that the trustee "had led

24  [the principal] to reasonably believe that the judgment would be set aside upon

25  satisfaction of the promissory note."  *Id.*  Thus, the bankruptcy court held that the

26  principal was entitled to relief from judgment pursuant to Rule 60(b)(6) "because the

27  amount of the judgment [was] unreasonable in proportion to his original obligation and

28  the seriousness of the default."  *Id.* at 31.  The bankruptcy court then enjoined

23

1   enforcement of the judgment and held that the purchaser was entitled to the unpaid

2   amount of the settlement note, plus interest at the note rate and attorneys' fees, less any

3   money previously recovered by the purchaser through writs of execution. *Id.* On the

4   appeal of the assignee of the trustee which purchased the judgment, the district court

5   affirmed. *Id.* at 31-34.

6        On appeal to the district court in *Wescot*, the purchaser argued that the bankruptcy

7   court lacked jurisdiction to enjoin the stipulated judgment for $1 million under the

8   settlement pursuant to Rule 60(b) of the Federal Rules of Civil Procedure because the

9   principal did not seek such relief within a reasonable time. *Id.* at 30-31. The district court

10   held that the bankruptcy court did not abuse its discretion in enjoining enforcement of the

11   $1 million default judgment pursuant to Rule 60(b)(6) because the principal had shown

12   extraordinary circumstances to warrant relief. *Id.* at 31-34. The district court held that the

13   bankruptcy court did not abuse its discretion based on its determinations that the amount

14   of the default judgment was unreasonable in proportion to the original obligation and the

15   seriousness of the default, resulting an unconscionable penalty based on California law,

16   which it held to be instructive and applicable based on the "dearth of federal law on

17   point," and the principal was induced not to appeal the judgment in reasonable reliance

18   on the trustee's promise not to enforce the default judgment based on payment of the

19   note. *Id., citing inter alia, Sybron Corp. v. Clark Hospital Supply Corp.,* 76 Cal. App. 3d

20   896 (1978).

21        The court concludes that the two primary case authorities relied upon by Trustee

22   do not warrant denial of Rule 60 relief, namely, *Xerox Financial Services Life Insurance*

23   *Co. v. High Plains Limited Partnership,* 44 F.3d 1033 (1st Cir. 1995) and *Van Curen v.*

24   *Escamilla (In re VEC Farms, LLC),* 395 B.R. 674 (Bankr. N.D. Cal. 2008). The First

25   Circuit upheld the district court's denial of a judgment debtor's Rule 60 motion by

26   rejecting the debtor's claim that the settlement agreement imposed an unenforceable

27   liquidated damages penalty of holding him to the full liability of $6 million for his default on

28   a settlement payment of $125,000. 44 F.3d at 1040. In so holding, the First Circuit

1    stated: "This case does not involve in isolation the collection of $6 million for failure to pay

2    a $125,000 debt.  Any judgment about disproportion would depend on the reasonable

3    magnitude of all the claims settled by the [original] settlement and all of the benefits

4    received by [plaintiff]."  44 F.3d at 1040, *quoted in Trustee's Reply Memorandum* at 7,

5    *citing Xerox Financial Services,* 44 F.3d at 1040.  The actual grounds of the First Circuit's

6    holding were that the judgment debtor made an insufficient showing that there was a

7    penalty under the circumstances of the case: "In all events, there is no showing that

8    enforcement of the judgments involves a penalty."  *Id.*  The First Circuit further stated that

9    "[e]ven if the penalty defense were available, it was [debtor's] burden to make a colorable

10   showing of overall disproportion [under Illinois law] through affidavits before the district

11   court needed even consider taking the claim seriously" and that "[h]is jumble of

12   assertions and conclusions does not even begin to make such a showing."  *Id.*  The First

13   Circuit concluded that the issue of whether a federal judgment may be set aside is a

14   matter of federal law, though state law is "very instructive" and observed that on the issue

15   of whether a penalty defense is available on a contract of "accord," i.e., a contract to

16   settle a pending or threatened lawsuit, "the sparse case law is divided, weighted slightly

17   in favor of Williston" which says that such a defense is not available.  44 F.3d at 1039,

18   *citing,* 5 Williston, *Contracts* § 780, at 700-01 (3d ed. 1961) and *comparing Resolution*

19   *Trust Corp. v. Avon Ctr. Holdings, Inc.,* 832 P.2d 1073, 1075 (Colo. Ct. App. 1992)

20   (holding that the penalty analysis is inappropriate); *Crosby Forrest Products, Inc. v.*

21   *Byers,* 623 So.2d 565, 568 (Fla. Dist. Ct. App.1993) (same); *Security Pacific Nat'l Bank v.*

22   *Roulette,* 24 Ohio St.3d 17, 492 N.E.2d 438, 441 (1986) (same) *with Sybron Corp. v.*

23   *Clark Hosp. Supply Corp.,* 76 Cal. App. 3d 896, 143 Cal. Rptr. 306, 310 (1978) (finding

24   an unenforceable penalty); *Aubrey v. Angel Enters., Inc.,* 43 Wash.App. 429, 717 P.2d

25   313, 315 (1986) (same).

26        The court is not persuaded that *Xerox Financial Services* case has much

27   application here and agrees with the analysis by the district court in *Wescot* that there is

28   a dearth of federal law on point, that there is no circuit authority in this circuit on point and

that state law on contracts is very instructive in interpreting the settlement contract, though whether to grant relief under Rule 60 is a matter of federal law. *In re Wescot International, Inc.,* 236 B.R. at 33 n. 3 (applying California law to determine whether a settlement judgment was an unconscionable liquidated damages penalty and declining to follow *Xerox Financial Services*, though noting that case stands for proposition that state law on contracts is very instructive on the precise issue).

Relying in part on *Xerox Financial Services,* in *VEC Farms,* the court denied the judgment debtors' Rule 60 motion by rejecting their claim that the settlement agreement imposed an unenforceable liquidated damages penalty under California law of holding them to a liability of $1.1 million for a default on the settlement payment of $750,000.  395 B.R. at 687-691, *citing inter alia, Xerox Financial Services Life Insurance Co. v. High Plains Limited Partnership,* 44 F.3d at 1039-1040.  The court in *VEC Farms* held that the amount of the default judgment of $1.1 million, or $364,000 over the settlement amount, was not an unenforceable liquidated damages penalty because under applicable California contract law, California Civil Code, § 1671(b), the liquidated damages amount bore a reasonable relationship to the range of harm that might have been reasonably anticipated by the parties to arise from breach of the settlement terms.  395 B.R. at 690 and 692.  The court in *VEC Farms* concluded that the amount of the alleged penalty at issue in *VEC Farms* bore a reasonable relationship to the amount of actual damages from the breach of the settlement agreement (the alleged penalty of $364,000 to the settlement amount of $750,000, or a ratio of 0.5) and was "proportional" in amount to the magnitude of the claims asserted by the trustee who was the judgment creditor.  *Id.* at 690.  "A liquidated damages provision is not invalid merely because it is intended to encourage a party to perform, so long as it represents a reasonable attempt to anticipate the losses to be suffered."  *Id.* at 691, *citing, Weber, Lipshie, & Co. v. Christian,* 52 Cal. App. 4th 645, 656 (1997); *see also, Ridgley v. Topa Thrift & Loan Ass'n.,* 17 Cal. 4th 981.

1    *VEC Farms* may be relevant to this case because the court in that case applied

2    California contract law at issue in the case at bar to determine whether a bankruptcy

3    settlement agreement was an unreasonable liquidated damages penalty, and in so

4    applying that law, that court determined that the settlement contract could be enforced

5    because it did not constitute a unreasonable liquidated damages penalty under

6    California.  To this extent, this court's analysis in the original memorandum decision and

7    this supplemental decision is not inconsistent with *VEC Farms.*

8    Trustee argues that the court should follow *VEC Farms* in concluding that state

9    law informs, but does not control, and also in distinguishing this case from "simple"

10   penalty cases, because as the court in *VEC Farms* observed, "this settlement agreement

11   involved more than a series of payments and the Court's analysis involves more than an

12   assessment of delay in making payments."  *Trustee's Reply Memorandum* at 9.  Quoting

13   *VEC Farms* with approval, Trustee urges that the court follow the approach of the First

14   Circuit in *Xerox Financial Services* as described by the court in *VEC Farms:* "The

15   approach taken by the First Circuit in *Xerox* is far more appropriate on these facts as it

16   took into consideration the scope of the litigation, the competing claims, and the

17   negotiated settlement terms in reaching its decision on proportionality and

18   reasonableness."  *Id., quoting, In re VEC Farms, LLC,* 395 B.R. at 684.

19   The court has carefully considered *VEC Farms* and declines to adopt Trustee's

20   invitation to follow it because the case at bar is factually distinguishable from *VEC Farms.*

21   This case is a simple penalty case.  Under the Global Settlement Agreement, having paid

22   $750,000, over 90% due under the settlement, defendants were to pay the remaining

23   less than 10% to Trustee in the amount of either $50,000 or $62,500 by a certain date,

24   i.e., 37 months from the Approval Date, and the breach here is lateness in payment.  As

25   observed earlier, Defendants were ready, willing and able to make either amount when

26   the Global Settlement Agreement, but Trustee insisted on a delayed payment tied to a

27   schedule that had to be computed through an analysis of a complex formula described in

28   labyrinthian terms.  The penalty for late payment under the Global Settlement Agreement

1  is a $9 million judgment, which do not have any reasonable or proportional relationship of

2  the alleged penalty to the amount of actual damages from the breach of the settlement

3  agreement (the alleged penalty of $8,187,500 against the settlement amount of

4  $812,500, or a ratio of 10.08), though Trustee argues that there is a proportional

5  relationship of the judgment and the original demand (i.e., a ratio of 1:1).  *Trustee's Reply*

6  *Memorandum* at 9 ("the apt comparison is the judgment to be enforced to the pre-

7  settlement claims").  There is no reasonable relationship between the breach and the

8  penalty here because the penalty has no bearing on the actual damages from the breach

9  for lateness, which makes it unconscionable and unenforceable under California law.

10  *California Civil Code,* § 1671(b); *Ridgley v. Topa Thrift & Loan Association,* 17 Cal.4[th] at

11  977; *In re Wescot International, Inc.*, 236 B.R. at 31-34.  Moreover, this case is also

12  factually distinguishable from *VEC Farms* because Trustee's post-judgment enforcement

13  conduct made it impossible for Defendants to comply with the settlement agreement

14  because Trustee with her exclusive knowledge did not give notice of the amount due to

15  Defendants.  *In re Wescot International, Inc.*, 236 B.R. at 29-34.

16      Trustee argues that Rule 60 relief cannot be granted because this court lacks

17  authority to grant relief as to the Florida Settlement Order.  *Trustee's Rule 60 Opposition*

18  at 1.  The court is not granting relief as to the Florida Settlement Order, but acting upon

19  the matters before this court, namely, Trustee's motion for entry of judgment, and

20  Defendants' motion for relief from the orders of this court approving the Global Settlement

21  Agreement.  Trustee argues that granting Rule 60 relief would defeat the settled

22  expectations of the Florida Chapter 7 bankruptcy trustee and attaches copies of the case

23  docket sheets in that case, noting that the case was closed.  *Id.*  The court notes that the

24  case docket sheet in that case reflect that the Florida bankruptcy trustee filed "Trustee's

25  Final Report and Proposed Dividends" in that case on December 17, 2007, "Trustee's

26  Notice of Final Dividends to Creditors" on January 21, 2008, and "Trustee's Final Account

27  of Estate, Application for Closing and Discharge and Certification" on September 24,

28  2008.  *Case Docket Sheet, In re Bradford H. Sachs,* No. 03-30677-PGH Chapter 7

(United States Bankruptcy Court, Southern District of Florida), attached as *Exhibit A to Trustee's Rule 60 Opposition.* The Florida bankruptcy court entered the "Final Decree and Discharge of Trustee" in the Florida bankruptcy case on October 29, 2008, and the Florida bankruptcy case was closed on the same day. *Id.* These events took place before the last settlement payment under the Global Settlement Agreement was due in June 2009, which indicates to this court that the Florida bankruptcy trustee had no further expectations of recovery on behalf of that bankruptcy estate from the settlement agreement. As Defendants argue, it appears that the expectation of the parties, including the Florida bankruptcy trustee, was that either $800,000 or $812,500 would be due and paid under the settlement, of which $750,000 had been paid, so the Florida bankruptcy case was not worth keeping open for further administration over the last payment of either $50,000 or $62,600. *Reply of Defendants Andra Sachs, Ashby Enterprises and Max-Singer Partnership to Opposition to Motion for Relief from Orders and Judgments Pursuant to Rule 60 of the Federal Rules of Civil Procedure,* filed on December 11, 2012, at 3-4. The court concludes that there is no prejudice in granting Rule 60 relief to Defendants in regards to the Florida bankruptcy estate because that case was administered on the expectation that the last settlement payment of either $800,000 or $812,500 would be made as sought by the instant Rule 60 motion. While the court has no jurisdiction to grant relief from the order of another court and does not purport to grant such relief in this case, the court notes that its ruling on the pending motions may have preclusive effect under the doctrines of claim or issue preclusion.

All of the circumstances in the instant case indicate that Andra Sachs reasonably believed that the entire $9 million judgment would never be enforced against her, most importantly indicated by her clear ability and constant willingness to pay since she agreed to the settlement. This is a situation where the Trustee's litigation against the other defendants took longer than expected, and now that the Trustee's litigation efforts against the other defendants have failed, it is clearly evident that Trustee is attempting to collect against the unsuspecting Andra Sachs Defendants, who were left in the dark for over

1  seven years from entry of the settlement in 2005 to learning of Trustee's full payment

2  demands in 2012.  Considering these Defendants' demonstrations of good faith in

3  attempting to comply under the Global Settlement Agreement, the labyrinthian nature of

4  the provisions of the Global Settlement Agreement, especially the unreasonable and

5  unconscionable Dye Buyout Provision and its "no notice" term, Trustee's anticipation that

6  Defendants would not be represented by counsel during the time period the last

7  settlement payment would become due and payable, and Trustee's failure to give notice

8  to Defendants of what was owed for the last settlement and when it was due, which were

9  matters solely within her exclusive knowledge of her recovery from the other defendants

10 in this adversary proceeding, the court finds that extraordinary circumstances warrant the

11 application of Rule 60(b)(6) in this case; and, the Rule 60(b)(6) motion was brought with a

12 reasonable time because Trustee did not notify Defendants of the amount due on the last

13 settlement payment until 2012, Defendants agreed to tender the amount of the last

14 settlement payment with interest, but were refused by Trustee and filed the Rule 60

15 motion shortly thereafter.

16    The court concludes that *Espinosa* is inapposite because this is not a situation

17 where a party is seeking Rule 60(b)(6) relief as a substitute for appeal, but to avoid the

18 consequences of post-judgment, post-appeal events which make the operation of the

19 final orders unjust in these circumstances.  *In re Wescot International, Inc.*, 236 B.R. at

20 29-34.  Because the intent and effect of Rule 60(b)(6) relief here is not to avoid the *res*

21 *judicata* effect of the final orders, but to do substantial justice based on the exceptional

22 circumstances of this case, *Espinosa* is distinguishable from the case at bar, and the

23 Andra Sachs Defendants are entitled to relief from enforcement of the judgment pursuant

24 to Rule 60(b)(6).

25    Additionally, California Civil Code, § 3275, provides for relief from forfeiture:

26 "Whenever, by terms of an obligation, a party thereto incurs a forfeiture, or a loss in the

27 nature of a forfeiture, by reason of his failure to comply with its provisions, he may be

28 relieved therefrom, upon making full compensation to the other party, except in the case

1  of a grossly negligent, willful, or fraudulent breach of duty."  *See also, Ridgley v. Topa*

2  *Thrift & Loan Association,* 17 Cal. 4th at 976; 1 Witkin*, Summary of California Law,*

3  Contracts, ¶ 832 at 915-916.  Here, Defendants may seek relief from forfeiture under the

4  settlement contract by making full compensation to the other party, Trustee, by paying

5  the last settlement payment, plus a reasonable rate of interest, from the due date to the

6  date of payment.  As discussed herein, Defendants have not acted in a way to constitute

7  a grossly negligent, willful or fraudulent breach of duty under the contract to except them

8  from the application of California Civil Code, § 3275.  Defendants have been ready,

9  willing and able to make the last settlement payment and would have done so if Trustee

10  had given them notice of what was due and when based on Trustee's exclusive

11  knowledge of these matters, and Defendants promptly tendered payment when they

12  finally learned of the amount due.

13      Moreover, California Civil Code, § 1670.5, provides for court action regarding an

14  unconscionable contract or clause of a contract:  "If the court as a matter of law finds the

15  contract or any clause of the contract to have been unconscionable at the time it was

16  made the court may refuse to enforce the contract, or it may enforce the remainder of the

17  contract without the unconscionable clause as to avoid any unconscionable result."

18  Because the court has found that the liquidated damages penalty of $9 million reflected in

19  the judgment being requested by Trustee is an unconscionable penalty, the court

20  pursuant to California Civil Code, § 1670.5 exercises its discretion to enforce the

21  remainder of the contract without the unconscionable penalty and grants the Rule

22  60(b)(6) motion to the extent to allow Defendants make the last settlement payment of

23  $62,500, plus interest at a reasonable rate, to Trustee in full satisfaction of their

24  obligations under the Global Settlement Agreement approved by this court in the

25  California Settlement Order.  Defendants have requested that the court grant relief from

26  the liability judgment sought by Trustee pursuant to the Global Settlement Agreement,

27  which is the subject of Trustee's motion for entry of judgment and is not yet entered, and

28  as such, is not ripe in a technical sense for Rule 60 relief.  Granting Rule 60 relief as to

1  the California Settlement Order approving the Global Settlement Agreement deeming

2  payment of the last settlement amount of $62,500 as full satisfaction of their liability will in

3  effect give Defendants the relief they seek by their Rule 60 motion.

4      The Global Settlement Agreement provides that a party may recover reasonable

5  attorneys' fees if they are reasonably required to enforce their rights under the

6  agreement.  *Global Settlement Agreement* at 16-17, ¶¶ 20, *attached as Exhibit 2 to*

7  *Stipulation of Facts*.  The court declines to make such an award at this time and grants

8  leave to the parties to file any motion for attorneys' fees under such provision within 30

9  days of entry of the order granting the Rule 60 motion.

10     This Supplemental Memorandum Decision amends and supplements the original

11  Memorandum Decision entered on March 4, 2013.  To the extent that the original

12  Memorandum Decision and this Supplemental Memorandum Decision are inconsistent,

13  this Supplemental Memorandum Decision supersedes the prior memorandum decision.

14     IT IS SO ORDERED.

15                                        ###

Date: March 15, 2013

_____

Robert Kwan
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **SUPPLEMENTAL MEMORANDUM DECISION RE: PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT AND DEFENDANT'S MOTION PURSUANT TO FED. R. CIV. P. 60** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **March 15, 2013**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below:

Natalie C Boyajian   natalie.daghbandan@bryancave.com,
raul.morales@bryancave.com;trish.penn@bryancave.com
Allen Chiu   allen.chiu@lw.com
Jacquelyn H Choi   jchoi@wwolawyers.com
Robert A Franklin   rfranklin@murraylaw.com
Andy Kong   Kong.Andy@ArentFox.com
Nhung Le   nle@luce.com
Elan S Levey   elan.levey@usdoj.gov, louisa.lin@usdoj.gov
Ronald E Michelman   ronaldmichelman@sbcglobal.net
Kimberly A Posin   kim.posin@lw.com
Amy Quartarolo   amy.quartarolo@lw.com, laura.pumerville@lw.com
Shelly Rothschild   rothschildlaw@yahoo.com
David R Weinstein   david.weinstein@bryancave.com,
raul.morales@bryancave.com;trish.penn@bryancave.com

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

Latham & Watkins LLP
Daniel Scott Schecter
633 W. Fifth St., Suite 4000
Los Angeles, CA  90071

Pachulski Stang Ziehl & Jones LLP
Teddy M. Kapur
10100 Santa Monica Blvd., Suite 1300
Los Angeles, CA  90067-4114

Stutman Triester & Glatt
K. John Shaffer
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA  90067

M. Ali Malik
Jackson DeMarco Tidus & Peckenpaugh
2030 Main St., Suite 1200
Irvine, CA 92614

Shulman, Hodges & Bastian LLP
James C. Bastian
8105 Irvine Center Dr., Suite 600
Irvine, CA  92618

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

F 9021-1