FILED & ENTERED

JUN 24 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gae          DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:12-bk-16351-RK |
| FLASHCOM, INC., | Chapter 11 |
| Debtor. | Adv. No. 2:12-ap-01339-RK |
| _____ | |
| CAROLYN A. DYE,<br>Liquidating Trustee,<br><br>        Plaintiff,<br><br>vs.<br><br>ANDRA SACHS;<br>COMMUNICATIONS VENTURES III,<br>L.P.; COMMUNICATIONS<br>VENTURES III CEO &<br>ENTREPRENEURS FUNDS L.P.;<br>MAYFIELD IX, a Delaware Limited<br>Partnership; MAYFIELD<br>ASSOCIATES FUNDS IV, a Delaware<br>Limited Partnership; DAVID<br>HELFRICH; TODD BROOKS;<br>BRADFORD SACHS; RICHARD<br>RASMUS; and KEVIN FONG,<br><br>        Defendants. | AMENDED SUPPLEMENTAL<br>MEMORANDUM DECISION RE:<br>PLAINTIFF'S MOTION FOR ENTRY OF<br>JUDGMENT AND ANDRA SACHS<br>DEFENDANTS' MOTION FOR RELIEF<br>FROM ORDERS PURSUANT TO FED. R.<br>CIV. P. 60 |

In the original Memorandum Decision re: Plaintiff's Motion for Entry of Judgment

and Andra Sachs Defendants' Motion Pursuant to Fed. R. Civ. P. 60, filed and entered on

1    March 5, 2013 as Docket No. 634, the court ruled that it would grant the motion of

2    defendants Andra Sachs, Ashby Enterprises and Max-Singer Partnership (collectively

3    known as the "Andra Sachs Defendants") for relief under Rule 60 of the Federal Rules of

4    Civil Procedure.  (In this amended supplement, the Andra Sachs Defendants are also

5    referred to as "Defendants," and Andra Sachs is sometimes referred to as "Andra".)

6    However, in its original memorandum decision, the court did not address the argument of

7    plaintiff Carolyn Dye, Liquidating Trustee ("Trustee") that such relief is precluded by the

8    United States Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*,

9    559 U.S. 260, 130 S.Ct. 1367 (2010).  By this Amended Supplemental Memorandum

10   Decision, the court addresses and rejects the Trustee's argument.  This amended

11   supplemental memorandum decision amends the court's supplemental memorandum

12   decision filed and entered on March 4, 2013 to correct factual inaccuracies in that

13   decision referring to debtor as a California corporation and to discuss the applicable

14   interest rate on the judgment to be entered on the Trustee's motion after consideration of

15   the supplemental briefing on that issue ordered after the supplemental memorandum

16   decision was filed and entered on March 4, 2013.

17        The court concludes that this case is not controlled by *Espinosa* because there are

18   extraordinary circumstances that warrant relief under Rule 60(b)(6), which the court

19   enumerates here.  In her papers, Trustee argues that, pursuant to *Espinosa*, the Global

20   Settlement Agreement is *res judicata* because the Andra Sachs Defendants never

21   appealed two settlement orders approving the Global Settlement Agreement: the *Order*

22   *Authorizing Compromise of Controversies with Andra Sachs and Estate of Bradford H.*

23   *Sachs*, entered by this court on November 1, 2005 (the "California Settlement Order"),

24   and the *Order Ruling on Motion to Compromise Controversy and Allowing Claims #1 and*

25   *#5 as Filed and Allowing Claim #3 in Reduced Amount of $6,000,000*, entered by the

26   United States Bankruptcy Court for the Southern District of Florida on June 14, 2006 (the

27   "Florida Settlement Order").  *Plaintiff's Opposition to Motion of Defendants Andra Sachs,*

28   *Ashby Enterprises and Max-Singer Partnership for Relief from Orders and Judgments*

1    *Pursuant to Rule 60 of the Federal Rules of Civil Procedure ("Trustee's Rule 60*

2    *Opposition"),* filed on December 4, 2012, at 5-6, 11-13; *see also, Plaintiff's Reply*

3    *Memorandum in Support of Motion for Entry of Judgment Establishing Liability of Andra*

4    *Sachs, Ashby Enterprises and Max-Singer Partnership; Declaration of David R.*

5    *Weinstein ("Trustee's Reply Memorandum"),* filed on May 23, 2012, at 4-8.  Trustee

6    argues that, even if the Global Settlement Agreement violates California law—which the

7    Trustee disputes—nevertheless, these settlement orders are *res judicata* and bind the

8    parties, precluding a Rule 60 challenge.  *Id.*

9         In *Espinosa*, the Supreme Court considered a debtor's chapter 13 plan in which he

10    proposed to repay only the principal of his student loan debt—held by United Student Aid

11    Funds, Inc. ("United")—over the life of the plan.  130 S.Ct. at 1373-1374.  The plan

12    provided that, upon completion of plan payments, the accrued interest on the student

13    loans would be discharged.  *Id.*  United received notice of the plan, but did not object to

14    the proposed discharge of the accrued interest.  *Id.* at 1374.  The bankruptcy court

15    confirmed the plan without holding an adversary proceeding or making a finding of undue

16    hardship, which is required under 11 U.S.C. §§ 523(a)(8) and 1328(a).  *Id.*

17    Subsequently, after completing plan payments, the debtor received his Chapter 13

18    bankruptcy discharge and filed a motion requesting that the bankruptcy court direct

19    United to cease making collection attempts on the accrued interest.  United filed a cross-

20    motion pursuant to Federal Rule of Civil Procedure 60(b)(4), seeking to set aside as void

21    the confirmation order because the plan authorizing discharge of the student loan interest

22    violated 11 U.S.C. § 523(a)(8) and 1328(a).  *Id.*  The bankruptcy court denied the Rule 60

23    motion, and the Ninth Circuit held that the bankruptcy court had at most made a legal

24    error in the Chapter 13 plan confirmation order that United could have successfully

25    appealed; however, such a challenge to a legal error was not grounds for reconsideration

26    pursuant to Rule 60(b)(4), and the Ninth Circuit ultimately ruled in favor of debtor that the

27    plan confirmation order was *res judicata. Id.* at 1375.  The Supreme Court affirmed.  *Id.*

28    at 1382.

3

In *Espinosa*, the Supreme Court explained that "[f]ederal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *Id.* at 1377, *citing*, *Nemaizer v. Baker*, 793 F.2d 58, 65 (2nd Cir. 1986).  A judgment is thus not void "'simply because it is or may have been erroneous.'" *Espinosa*, 130 S.Ct. at 1377, *quoting*, *Hoult v. Hoult*, 57 F.3d 1, 6 (1st Cir. 1995) and 12 J. Moore, et al., *Moore's Federal Practice,* § 60.44[1][a], at 60-150 to 60-151 (3d ed. 2007).  The Supreme Court in *Espinosa* noted the balance struck by Rule 60(b)(4) between "the need for finality of judgments and the importance of ensuring that litigants have a full and fair opportunity to litigate a dispute." *Espinosa*, 130 S.Ct. at 1380.  Thus, to some degree, Trustee's reliance on *Espinosa* is not misplaced to argue in opposition to Defendants' Rule 60 motion that relief from judgment is not appropriate under Rule 60(b)(4) on grounds that the judgment is void simply because it may have been erroneous.  *Id.* at 1377; *see also, Notice of Motion and Motion of Defendants Andra Sachs, Ashby Enterprises and Max-Singer Partnership for Relief from Order and Judgments Pursuant to Rule 60 of the Federal Rules of Evidence ("Defendants' Rule 60 Motion"),* filed on November 21, 2012, at 9; *Trustee's Rule 60 Opposition* at 5-6.

This court is of the view that *Espinosa* is not dispositive of the instant case, because this case involves the application of Rule 60(b)(6) of the Federal Rules of Civil Procedure.  Rule 60(b)(6) states in pertinent part:  "On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6); *see also,* Fed. R. Bankr. P 9024 (Fed. R. Civ. P. 60 generally applies to bankruptcy cases with specific exceptions not applicable here); 3 Jones & Rosen, *Rutter Group Practice Guide: Federal Civil Trials and Evidence,* ¶ 20:400 at 20-76 (2012).  This provision "gives the district court power to vacate judgments 'whenever such action is appropriate to accomplish justice.'" *United States v. Sparks,* 685 F.2d 1128, 1130 (9th Cir. 1982),

1  *quoting, Klapprott v. United States,* 335 U.S. 601, 615 (1949).  "In order to obtain such

2  relief from a judgment, however, 'extraordinary circumstances' must exist."  *United States*

3  *v. Sparks,* 685 F.2d at 1130, *citing inter alia, Ackerman v. United States,* 340 U.S. 193,

4  199 (1950).  Rule 60(b)(6) is to be "used sparingly" in order to "prevent manifest injustice"

5  when "extraordinary circumstances [prevent] a party from taking timely action to prevent

6  or correct an erroneous judgment."  *United States v. Alpine Land & Reservoir Co*., 984

7  F.2d 1047, 1049 (9th Cir. 1993), *citing, Klapprott v. United States, supra; Ackerman v.*

8  *United States, supra;* and *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 857,

9  864 (1988); *see also, Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir. 2007).

10      In determining whether such extraordinary circumstances exist, the court must

11  balance the public policy favoring the finality of judgments against the "incessant

12  command of the court's conscience that justice be done in light of all the facts."  3 Jones

13  & Rosen, *Rutter Group Practice Guide: Federal Civil Trials and Evidence,* ¶ 20:402 at 20-

14  77, *citing, Blue Diamond Coal Co. v. Trustees of UMWA Combined Benefit Fund*, 249

15  F.3d 519, 529 (6th Cir. 2001); *see also,* 11 Wright, Miller, Kane and Marcus, *Federal*

16  *Practice & Procedure,* § 2860 (3rd ed. 2012) ("[Rule 60] attempts to strike a proper

17  balance between the conflicting principles that litigation must be brought to an end and

18  that justice should be done."), *citing inter alia, Delay v. Gordon,* 475 F.3d at 1044 (quoting

19  treatise).  For example, Rule 60(b)(6) should not be invoked as a substitute for appeal

20  where a litigant bypassed a right to appeal for tactical reasons.  *United States v. Alpine*

21  *Land & Reservoir Co*., 984 F.2d at 1049, *citing, Ackerman v. United States, supra*.

22      In this case, the court finds that there are exceptional circumstances warranting

23  relief from the operation of the California and Florida settlement orders approving the

24  Global Settlement Agreement.  These exceptional circumstances stem not so much from

25  the orders themselves, but the post-judgment enforcement of the orders by Trustee.  It

26  appears that the parties in their briefing and the court in its initial memorandum decision

27  conflate the final orders themselves and the post-judgment enforcement of the orders by

28  the Trustee.

1    On July 11, 2002, Trustee filed the instant adversary proceeding against the Andra

2  Sachs Defendants and other defendants, including the so-called VC Defendants, to

3  recover an allegedly preferential transfer of $9 million by debtor, Flashcom, Inc., to Andra

4  Sachs.  *Stipulation of Facts Concerning Plaintiff's Motion for Entry of Judgment*

5  *Establishing Liability of Andra Sachs, Ashby Enterprises and Max-Singer Partnership*

6  *("Stipulation of Facts"),* filed on June 21, 2012, at 2, ¶ 2.  The Andra Sachs Defendants

7  and Trustee agreed to settle their dispute in this adversary proceeding and with the

8  trustee in the adversary proceeding in the Florida bankruptcy case of Bradford Sachs,

9  Andra Sachs's ex-spouse, as reflected in a written settlement agreement referred to as

10  the "Global Settlement Agreement."  *Id.* at 3, ¶¶ 3-4.  The Global Settlement Agreement

11  was approved by this court in this adversary proceeding and another bankruptcy court in

12  the Florida adversary proceeding as reflected in the California and Florida Settlement

13  Orders.  *Id.* at 3, ¶¶ 4-5 and Exhibit 2 attached thereto.

14    The Global Settlement Agreement provided that the liability of the Andra Sachs

15  Defendants would be settled on the condition that Andra Sachs make three separate

16  settlement payments, that is, (1) a first payment of $250,000 on the so-called Approval

17  Date; (2) a second payment of $500,000 within 6 months of the Approval Date; and (3) a

18  third payment under the so-called "Dye Buyout Option" of either: (a) $50,000 if within 36

19  months of the Approval Date Trustee received at least $2 million from the remaining

20  defendants (i.e., the VC Defendants) in the adversary proceeding, and such $50,000

21  payment would be due within 60 days after Trustee receives, and notifies Andra Sachs,

22  Trustee has received at least $2 million from the other defendants; or (b) $62,500 if

23  Trustee's recovery against the other defendants is less than $2 million (including no such

24  recovery at all) and such $62,500 payment shall be due within the earlier of (i) the end of

25  the 37th month after the Approval Date or (ii) such time as there is a final resolution of the

26  adversary proceeding by entry of a judgment or an order approving a settlement

27  agreement.  *Global Settlement Agreement* at 4-5, 10-11, *attached as Exhibit 2 to*

28

*Stipulation of Facts*.[1]  The Global Settlement Agreement provided that the Andra Sachs

Defendants would settle their liability in full for payments totaling either $800,000 or

$812,500.  *Id.*; *see also, Declaration of Andra Sachs in Support of Defendants Andra*

*Sachs, Ashby Enterprises and Max-Singer Partnership from Relief from Orders and*

*Judgments Pursuant to Rule 60 of the Federal Rules of Civil Procedure ("Andra Rule 60*

*Declaration"),* filed on November 21, 2012, at 2.

The first two payments are not at issue because the parties acknowledge that in

2006, Andra Sachs made the first two settlement payments totaling $750,000 to the

Florida bankruptcy trustee as called for pursuant to the Global Settlement Agreement.

*Stipulation of Facts* at 3, ¶ 7; *see also, Sachs Rule 60 Declaration* at 3.  The third

settlement payment governed by the Dye Buyout Option in the Global Settlement

Agreement is the term of that agreement, which is at the center of the dispute between

the parties.

The triggering of the third settlement payment is tied to the so-called Approval

Date, which does not refer to a specific date by day and year, but is a defined formulaic

term referring to other trigger dates:

---

[1]  The specific language of the terms governing the third payment is as follows:

    10.    Dye Buyout Option

        a.    The payment due under the Dye Buyout Option shall be $50,000 if, within 36 months of the Approval Date, Dye receives at least $2,000,000 from the remaining defendants in the in the [sic] Dye v. Andra Adversary Proceeding (i.e., Communications Ventures III, L.P., Communications Ventures III CEO & Enterpreneurs Funds L.P., Mayfield IX, Mayfield Associated Funds IC, David Helfich, Todd Brooks, Bradford Sachs, Richard Rasmus and Kevin Fong (collectively, "Other Defendants").  Such $50,000 payment shall be due within 60 months after Dye receives, and notifies Andra that she has received, at least $2,000,000 from the Other Defendants.

        b.    The payment due under the Dye Buyout Option shall be $62,500 if Dye's recovery against the Other Defendants within 36 months of the Approval Date is less than $2,000,000 (including if there is no such recovery at all).  Such $62,500 payment shall be due within the earlier of (i) the end of the 37th month after the Approval Date or (ii) such time as there is a final resolution of the Dye v. Andra Adversary Proceeding by entry of a judgment or an order approving a settlement agreement.

*Global Settlement Agreement* at 10-11, *attached as Exhibit 2 to Stipulation of Facts*.  The court quotes the provisions relating to the so-called Dye Buyout Option verbatim because in the court's view, the exact language of the provisions need to be read slowly and carefully in order to be fully understood.

> The "Approval Date" will be the first business day following the tenth day after the entry of the later of the two orders of the respective Bankruptcy Courts approving this Agreement, so long as no stay of either of those orders has been entered prior to that date, provided that an irrevocable escrow of $500,000 has been made with Shulman Hodges & Bastian LLP (the "Escrow Agent") prior to the hearing on the settlement by Andra.

*Global Settlement Agreement* at 3-4, ¶ 2, *attached as Exhibit 2 to Stipulation of Facts*. The so-called Approval Date referred to in the Global Settlement Agreement was not known when the Global Settlement Agreement was entered into. *Stipulation of Facts* at 3, ¶ 5. Andra Sachs signed the Global Settlement Agreement on behalf of the Andra Sachs Defendants on an unspecified date in September 2005. *Global Settlement Agreement* at 18 (signature page), *attached as Exhibit 2 to Stipulation of Facts*. Andra Sachs signed the Global Settlement Agreement on behalf of the Andra Sachs Defendants on an unspecified date in September 2005. *Id.*

This court entered the California Settlement Order approving the Global Settlement Agreement on November 1, 2005, and the Florida bankruptcy court entered the Florida Settlement Order approving the Global Settlement Agreement on June 14, 2006. *Stipulation of Facts* at 3, ¶ 6. The parties now agree that the Approval Date of the Global Settlement Agreement was June 26, 2006. *Id.*

The Global Settlement Agreement further provided that in the event that the Andra Sachs Defendants "do not exercise the Dye Buyout Option by making the required payment prior to its execution," Trustee may record a judgment for avoidance of $9 million transfer, may file, have entered and record a judgment of liability against the Andra Sachs Defendants for the $9 million transfer and may proceed to execute on the assets of these defendants. *Global Settlement Agreement* at 4-5, 10-11, *attached as Exhibit 2 to Stipulation of Facts*.

During the negotiation of the Global Settlement Agreement, the Andra Sachs Defendants were represented by counsel, James Bastian, of the law firm of Shulman, Hodges & Bastian LLP. *Declaration of David R. Weinstein attached to Plaintiff's Reply Memorandum in Support of Motion of Judgment Establishing Liability ("Weinstein Reply*

1    *Declaration"),* filed on May 23, 2012, at 14.  Trustee was represented by David R.

2    Weinstein, then of the law firm of Weinstein, Eisen & Weiss LLP.  *Id.* and Exhibit 8

3    attached thereto.

4        At the time Andra Sachs entered into the Global Settlement Agreement, she was

5    ready, willing and able to pay the remaining $50,000 or $62,000 of the settlement amount

6    and would have been able to do so at the time the court approved the settlement.

7    *Supplemental Declaration of Andra Sachs in Opposition to Plaintiff's Motion for Entry of*

8    *Judgment,* filed on September 6, 2012, at 2.  Andra Sachs told her attorney, Bastian, that

9    she wanted to end this litigation "once and for all" and preferred to pay the entire

10    settlement and be done with it.  *Id.*  Bastian advised Andra Sachs that he had offered this

11    to counsel for Trustee, but was told that Trustee would not permit the Global Settlement

12    Agreement to require payment of the $50,000 or $62,500 at the time of the settlement

13    approval and insisted on including the Dye Buyout provision in the Global Settlement

14    Agreement which would provide for her payment of this amount in the future.  *Id.*  Bastian

15    advised Andra Sachs that he was advised by counsel for Trustee that it was not Trustee's

16    intention to hold her or the other settling defendants liable for the $9 million specified in

17    the liability judgment, but that the intent was instead to use the liability judgment to help

18    him (i.e., counsel for Trustee) to obtain a judgment against the other defendants.  *Id.*

19    According to Andra Sachs, she and the other settling defendants agreed to the Dye

20    Buyout Option provision in the Global Settlement Agreement in reliance with the above-

21    stated intent of Trustee.  *Id.* [2]

22

23    [2]   Andra's version of the facts on Trustee's intent on enforcement of the settlement is plausible because
Trustee attempted to use the stipulated judgment between Trustee and her, her husband and their affiliated

24    entities to set aside the $9 million transfer as preferential under 11 U.S.C. § 547 against the other non-
settling defendants, but the court held that the stipulated judgment avoiding the transfer could not used by

25    Trustee to deprive the nonsettling defendants of their constitutional due process right to defend against the
preferential transfer and avoidance claims.  *Dye v. Sachs (In re Flashcom, Inc.)*, 361 B.R. 519, 522-527

26    (Bankr. C.D. Cal. 2007)(Ryan, J.) .  This ruling is now on appeal before the district court with the court's
other rulings.  Andra's statements are corroborated by the Bastian Declaration, which the court has ruled

27    as inadmissible settlement discussion statements pursuant to Rule 408 of the Federal Rules of Evidence
for purposes of determining liability on Trustee's Judgment Motion. *Declaration of James C. Bastian*

28    *("Bastian Declaration"),* attached to *Opposition of Defendants Andra Sachs, Ashby Enterprises and Max-*

1        According to Weinstein, he did not tell Bastian that Trustee did not intend to use

2   the liability judgment to hold Andra Sachs liable for damages in the full principal amount

3   of $9 million.  *Weinstein Reply Declaration* at 14, ¶ 4.  However, Weinstein stated:

4        I did, however, tell Mr. Bastian that I did not <u>expect</u> that the Trustee would
         recover the full principal amount of $9,000,000 from Ms. Sachs (or Ashby
5        Enterprises or Max-Singer Partnership), not because the Trustee had no
         such intent but because we had agreed to (or were discussing) a
6        compromise formulation under which Ms. Sachs would entirely control her
         own ability to take advantage of the "Dye Buyout Option" and that I
7        anticipated that, given expected efforts of Ms. Sachs and (or) Mr. Bastian,
         the Trustee was unlikely to eventually recover the $9,000,000 from Ms.
8        Sachs.

9

10  *Id.* (emphasis in original).  Weinstein also told Bastian that:

11       . . . because an extended period was going to pass before Ms. Sachs
         would have to make the Buyout payment, the Trustee and I specifically did
12       <u>not</u> want to have the obligation to remember to notify Ms. Sachs and make
         a demand.
13

14  *Id.* at 15, ¶ 5 (emphasis in original).

15       Weinstein said that Bastian had told him that Andra Sachs was a difficult client and

16  that Bastian did not want to represent her after the settlement was approved.  *Id.*  In

17  response to these comments of Bastian, Weinstein responded:

18       . . . in effect, that since that meant it was probably going to be true that we
         would not be able to give an effective notice to Mr. Bastian, but instead
19       would have to search for Ms. Sachs, it was even more certain that we
         would not agree to a notice-and-demand feature of the Buyout payment
20       (unless we were informing her of a modified obligation) and that burden
         would be on Ms. Sachs.
21

22

23  _____
    *Singer Partnership to Plaintiff's Motion for Entry of Judgment Establishing Liability of Andra Sachs, Ashby*
24  *Enterprises and Max Singer Partnership,* filed on May 16, 2012.  However, the court does not see why
    Bastian Declaration is not admissible for other purposes, such as Andra's reliance in entering into the
25  settlement for purposes of Defendants' Rule 60 motion.  However, the court notes that there is a factual
    dispute between the Bastian Declaration and the Weinstein Reply Declaration as to statements of Trustee's
26  intention, which the court need not resolve since the court does not depend on this conflicting evidence in
    ruling upon the Rule 60 motion based on the unenforceability and unconscionability of the so-called Dye
27  Buyout Option and Trustee's failure to give reasonable notice of the amount due on the last settlement
    payment making Defendants unable to perform.
28

*Id.* According to Weinstein, Bastian agreed, and "that provision [for no notice] was clearly written into the Global Settlement Agreement." *Id.*

      At the hearing on the motion to approve the Global Settlement Agreement before this court, Bastian represented the Andra Sachs Defendants told the court that the settlement was in the best interests of the creditors of the bankruptcy case because the settlement payments were secured by collateral, that there was a stipulated judgment for recovery of the transfer under 11 U.S.C. § 550 that "if she [Andra Sachs] doesn't perform, they can come and record, and then pursue all of her assets, and all other assets that are available" and that "[s]o, if she happens to default, which will happen over my dead body, there's substantial collateral protection as well." *Transcript of Proceedings Before the Honorable John E. Ryan, United States Bankruptcy Judge, September 27, 2008, In re Flashcom, Inc., Case No. SA 00-19215-JR, attached as Exhibit 12* at 21 *to Plaintiff's Supplemental Reply Memorandum in Support of Motion for Entry of Judgment,* filed on October 8, 2012, at 33.

      On September 23, 2011, the court entered its memorandum decision resolving the remaining claims in the adversary proceeding against the other defendants, ruling that Trustee take nothing on her claims. *Stipulation of Facts* at 3, ¶ 8. [3] Trustee did not recover any money from the defendants in the adversary proceeding other than the Andra Sachs Defendants,[4] and as a result, the following dates applied with respect to the "Dye Buyout Option" in the Global Settlement Agreement: (1) July 31, 2009 marked the end of the 37th month after the Approval Date under paragraph 10(b)(1) of the Global Settlement Agreement; and (b) September 23, 2011, the date of the final order disposing

---

[3]    The judgment on the memorandum decision and prior rulings of the court in this adversary proceeding are currently on appeal before the district court.

[4]    The record before this court on the pending motions is silent as to what Trustee otherwise collected on her large claim filed in the Florida bankruptcy court in Bradford Sachs's bankruptcy case.   The Global Settlement Agreement provided that Trustee's claim in the Florida bankruptcy case would be allowed in the amount of $6 million and Trustee's other claims were to be allowed as filed with the Florida bankruptcy trustee to seek court approval to make an interim distribution on these claims. *Global Settlement Agreement* at 13-14, ¶ 14(e), attached as *Exhibit 2 to Stipulation of Facts; see also, Florida Settlement Order* at 3, attached as *Exhibit 4 to Stipulation of Facts.*

of the remaining claims in the adversary proceeding, marked the date of the final

resolution of the adversary proceeding under paragraph 10(b) of the Global Settlement

Agreement. *Id.* at 4, ¶ 9.

Because Trustee did not receive at least $2 million from the other defendants in

the adversary proceeding by June 26, 2009, 36 months after the Approval Date,

paragraph 10 of the Global Settlement Agreement operate to call for the Andra Sachs

Defendants to pay the final settlement payment of $62,500 to Trustee by July 31, 2009,

the 37th month after the Approval Date. *Id.* at 4, ¶ 10.

Trustee did not demand payment, notify or otherwise attempt to communicate with

any of the Andra Sachs Defendants or their counsel about the Global Settlement

Agreement in June 2009, or after that, until January 2012 when Trustee's counsel,

Weinstein, wrote an email to Bastian. *Id.* at 4, ¶ 11.  Bastian no longer represented the

Andra Sachs Defendants and so advised Weinstein. *Id.*

After Andra Sachs received service of Trustee's Judgment Motion in March 2012,

she and her counsel offered, more than once in March 2012 and thereafter, to deliver

$62,500 to Trustee, intending that such payment would satisfy the obligations of the

Andra Sachs Defendants under the Global Settlement Agreement. *Stipulation of Facts* at

4, ¶ 12; *Andra Rule 60 Declaration* at 3.

After Andra Sachs made the first two settlement payments, she did not "receive

any notice whatsoever from Bastian, Trustee Dye or her counsel regarding the $62,500

Settlement Payment until I received the Judgment Motion in late March 2012." *Sachs

Rule 60 Declaration* at 3.  She further stated in her Rule 60 Declaration: "To be clear, I

did not receive a telephone call, an email, or hard-copy letter regarding the $62,500

Settlement Payment, the efforts to collect from the other, non-settling defendants, or the

status of the Adversary Proceedings for approximately 5 years." *Id.* (emphasis in

original).

1    In her declaration in opposition to Trustee's Judgment Motion, Andra Sachs

2 explained what arrangements she made regarding the third settlement payment under

3 the so-called Dye Buyout Option:

4        In July of 2006 after several years of costly litigation regarding
      Flashcom and the Trustee Carolyn Dye and Robert Furr, Andra Sachs
5     ("SACHS") entered into a global settlement agreement with Carolyn Dye,
      Weinstein, Weiss & Ordubegian LLP, and Robert Furr Trustee.
6     ("SACHS") Attorney of record was Jim Bastian from Shulman, Hodges,
      Bastian LLP.  The settlement agreement required 2 payments.  The first
7     payment of $750,000 was made shortly after the agreement was signed.
      It was ("SACHS") understanding that the 2nd (last and final payment of
8     either $50,000 or $62,500) was due when the case against the Venture
      Capitalists (Mayfield, David Helfich, Todd Brooks, and Kevin Fong),
9     (herein referred to as the VC's) was settled.  ("SACHS") was informed
      ("SACHS") counsel, Jim Bastian, that ("SACHS") would like to put the last
10    payment in a trust account at his firm to prevent any miscommunications
      or problems.  He told ("SACHS") that it was not necessary, and he would
11    advise ("SACHS") when the case was settled with the VC's and either
      $50,000 or $65,000 payment was due.   Over the next few years,
12    ("SACHS") spoke with Mr. Bastian on several occasions and asked him if
      the case with the VC's was settled, and when would the money be due.
13    His response was that he had not heard from David Weinstein or Carolyn
      Dye and he would let ("SACHS") know when he did.   ("SACHS")
14    understood that the payment of $62,500 or $50,000.00 was tied into
      whether or not Trustee Dye received at least 2 million dollars from the
15    VC's.  It was ("SACHS") understanding that this case had to be settled in
      order to make the final payment.  Several months ago, ("SACHS") recently
16    found out that the case against the VC's did not even settle until
      September 2011.  The confusing part of the settlement agreement was
17    exactly how much was to be paid, when, and to whom, and where was the
      payment to be made?  The funds have always been available to be paid
18    and ("SACHS") would have paid them immediately if asked by either Mr.
      David Weinstein, Carolyn Dye, or Jim Bastian.
19

20

21

22 *Declaration of Andra Sachs in Opposition to Plaintiff's Motion for Entry of Judgment*

23 *Establishing the Liability of Andra Sachs, Ashby Enterprises and Max-Singer Partnership*

24 *("Sachs Judgment Motion Declaration"),* filed on July 26, 2012, at 2-3.  In stating her

25 concern about the last payment, Andra Sachs further stated:

26        ("SACHS ") would have never risked the settlement over the last payment.
      The last payment of $62,500 or $50,000 was less than 10% of the
27    settlement amount of $750,000 that and ("SACHS") paid in full.
      ("SACHS") wanted more than anything to complete the agreement and
28

13

move on and never would have jeopardized this settlement agreement based on one last payment.  ("SACHS") never knew how much to send, where to send it, and who to make the check payable to.  Mr. Weinstein worked at several law firms over the years, and ("SACHS") never once received anything in the mail to notify me of his change of address and where to send the funds and the payment amount.  The agreement was very unclear as to how and where to send the funds due.  Given the confusing nature of the settlement agreement, ("SACHS") never would have been able to perform.  If Mr. Weinstein would have sent ("SACHS") just one demand, via email, letter, phone, call, telegram, or any method of communication, ("SACHS") would have paid the amount due immediately. ("SACHS") am shocked and horrified that Mr. Weinstein or Carolyn Dye would not accept the last payment due on the settlement agreement.  The penalty Carolyn Dye and Mr. Weinstein are trying to impose upon ("SACHS"), Ashby, and Max Singer are not only unconscionable, but so far out of proportion considering the payment of $750,000 was already made to settle the case.

*Id.* at 3-4.

In this case, by her motion to enter judgment, Trustee seeks to enforce the liquidated damages clause of the Global Settlement Agreement, which constitutes an unreasonable and unenforceable penalty in violation of California law.  In the original memorandum decision, the court has determined that the liquidated damages clause to be an unreasonable and unenforceable penalty because it bore no relationship to the range of actual damages that the parties could have anticipated would flow from a breach of the settlement agreement.  *Memorandum Decision* at 6-11, *citing, California Civil Code,* § 1671(b); *Greentree Financial Group, Inc. v. Execute Sports, Inc.*, 163 Cal. App. 4th 495 (2008); *Eising v. Locke (In re Wescot International, Inc.)*, 236 B.R. 27 (N.D. Cal. 1999).  In the original memorandum opinion, the court concluded that it may rely upon California law in interpreting the settlement contract in this case, the Global Settlement Agreement.  *Memorandum Decision* at 7, *citing, In re Wescot International, Inc.,* 236 B.R. at 33 n. 3 and *Global Settlement Agreement* at 15-16, ¶ 17, attached as *Exhibit 2 to Stipulation of Facts* (incorporating California Civil Code, § 1542, to apply to releases of liability under agreement).  In this court's view, the applicable law governing the interpretation of the settlement contract in this case is California law because California is

14

1   the forum state in which this bankruptcy court sits on a case involving a California debtor,

2   Flashcom, Inc. [5], the events that gave rise to the dispute over the settlement occurred in

3   California [6], the parties are California parties (except for Bradford Sachs, then resident in

4   Florida, but previously in California, and the Florida bankruptcy trustee) [7] and were

5   represented by California counsel [8], the contract incorporated provisions of California law

6   and the contract does not otherwise contain a "choice of law" provision.  *See Amended*

7   *Complaint,* filed on July 19, 2002; *Global Settlement Agreement*, attached as *Exhibit 2 to*

8   *Stipulation of Facts; see also, In re Wescot International, Inc.,* 236 B.R. at 33 n. 3.

9         California Civil Code, § 1671(b), provides in pertinent part with exceptions not

10  applicable here that "a provision in a contract liquidating the damages for the breach of

11  the contract is valid unless the parties seeking to invalidate the provision establishes that

12  the provision was unreasonable under the circumstances existing at the time the contract

13  was made."  "A liquidated damages provision will be generally considered unreasonable,

14  and hence unenforceable under section 1671(b), if it bears no reasonable relationship to

15  _____

16  [5]   The prior memorandum decisions on Trustee's motion for entry of judgment and Defendants' Rule 60
    motion incorrectly identified debtor, Flashcom, Inc., as a California corporation.  Apparently, this error
17  stems at least from the caption on the Trustee's amended complaint filed on July 19, 2002, which which
    listed Debtor Flashcom, Inc., as a California Corporation.  This is to clarify Flashcom, Inc.'s status.
18  Flashcom, Inc., is a California debtor by virtue of filing its bankruptcy petition with a bankruptcy court for a
    California judicial district.  As the court noted in its published opinion, *Dye v. Sachs (In re Flashcom, Inc.),*
19  308 B.R. 485, 487 (Bankr. C.D. Cal. 2004), debtor is a foreign corporation incorporated in Delaware, having
    substantial business in California ("The following facts are undisputed: 1) Debtor was first incorporated in
20  Nevada on May 19, 1998; 2) Debtor was reincorporated in Delaware on January 20, 1999; 3) Debtor was
    operating as a foreign corporation in California at all relevant times . . . .").  Trustee in the Amended
21  Complaint alleged that Debtor was incorporated in the State of Delaware on January 20, 1999 and at all
    times relevant was doing business as a foreign corporation in the State of California, where its principal
22  place of business and all of its transactions took place, except as otherwise stated in the amended
    complaint.  *Amended Complaint,* filed on July 19, 2002, at 2-3.

23  [6]   The dispute here arose out of transactions took place in California where Debtor maintained its principal
    place of business, unless otherwise stated in the amended complaint.  *Amended Complaint,* filed on July
24  19, 2002.  The settlement was entered into by Trustee and the Andra Sachs Defendants, California parties,
    and negotiated by their California counsel, Weinstein and Bastian, in California.  *See Weinstein Reply*
25  *Declaration; Bastian Declaration.*

26  [7]   Trustee Carolyn Dye is the appointed Chapter 11 trustee supervising the bankruptcy estate in this case
    pending in the Central District of California, and the Defendants are California parties.

27  [8]   Counsel for Trustee, Weinstein, and counsel for Defendants, Bastian, are attorneys who maintained
    their law offices in California at the time the settlement was made in 2005.

28

the range of actual damages that the parties could have anticipated from a breach."

*Ridgley v. Topa Thrift & Loan Association,* 17 Cal. 4th 970, 977 (1998); *see also,* 1

Witkin, *Summary of California Law,* § 537 at 582 (10th ed. 2005 and 2012 Supp.).  "The

amount set as liquidated damages 'must represent the result of a reasonable endeavor

by the parties to estimate a fair average compensation for any loss that may be

sustained.'"  *Ridgley v. Topa Thrift & Loan Association,* 17 Cal. 4th at 977, *quoting,*

*Garrett v. Coast & Southern Fed. Sav. & Loan Assn.,* 9 Cal. 3d at 739.

Under the liquidated damages clause, Defendants are liable for a judgment in the

amount of $9 million for late payment of the remaining settlement payment of $62,500, or

in other words, the penalty of 144 times the amount due under the settlement for being

late.  *Global Settlement Agreement* at 10-11, ¶ 10(c), *attached as Exhibit 2 to Stipulation*

*of Facts*.  This multiple is far greater than the three times payment liquidated damages

penalty held by the court in *Greentree* to be unreasonable and unenforceable.  168 Cal.

App. 4th at 500.  The evidence in the record shows that there is no reasonable

relationship of the requested $9 million judgment for breaching the settlement agreement

to the range of actual damages that the parties could have anticipated from the breach by

Defendants here by paying the last settlement payment of $62,500 late.  Trustee has not

explained how $9 million is within the range of her actual damages from Defendants' late

payment of the remaining unpaid settlement amount of $62,500 assertedly due in June

2009, only four years ago.

Because the liquidated damages clause of the settlement agreement is an

unreasonable and unenforceable penalty, the court determines that the provision is an

unconscionable term in the settlement agreement.  California Civil Code, § 1671; *In re*

*Wescot International, Inc.*, 236 B.R. at 32-34 and nn. 2-5 (considering a judgment of

$1 million for a default of a settlement in the amount of $50,000 "precisely a subterfuge

for usury" (internal quotation marks omitted)); *cf., H.S. Perlin Co., Inc. v. Morse Signal*

*Devices of San Diego*, 209 Cal. App. 3d 1289, 1300-1302 (1989) (holding that a contract

provision which meets the requirements of a valid liquidated damages clause pursuant to

16

1    California Civil Code, § 1671, *cannot* be an "unconscionable" contract because of such

2    provision).

3        The liquidated damages clause is also unconscionable because under the

4    settlement agreement, Trustee need not give notice to Defendants when the clause is

5    invoked.  Because the liquidated damages clause of the settlement agreement is an

6    unconscionable contractual term, it should not be enforced.  *California Civil Code,*

7    § 1670.5 ("If the court as a matter of law finds the contract or any clause of the contract to

8    have been unconscionable at the time it was made the court may refuse to enforce the

9    contract, or it may enforce the remainder of the contract without the unconscionable

10   clause, or it may so limit the application of the unconscionable clause as to avoid any

11   unconscionable result."); *Restatement (Second) of Contracts*, § 208 (identical language).

12   Defendants seek relief from judgment under Rule 60 of the Federal Rules of Civil

13   Procedure to avoid enforcement of the order approving the settlement agreement

14   containing the unreasonable liquidated damages clause.

15       This is not a case where Defendants engaged in culpable behavior.  Defendants

16   never intended a default and were ready, willing and able to pay the entire settlement

17   amount of $800,000 or $812,500 when the settlement was approved in 2006.

18   Defendants paid the initial payments of $750,000 on time, representing over 90% of the

19   agreed settlement amount.  However, Trustee refused any early payment of the

20   remaining settlement amount of $50,000 or $62,000, insisting that Defendants agree to a

21   complicated payment arrangement which can be aptly described as "labyrinthian,"[9]

22   having the exact amount determined based on the outcome of the litigation against the

23   non-settling defendants.  (Andra Sachs' statements in her declarations that Trustee

24   _____

25   [9] A "labyrinth" is defined as "something highly intricate or convoluted in character, composition or
     construction." *The Free Online Dictionary*, www.thefreedictionary.com/labyrinth.  In Greek mythology, the
     Labyrinth was an elaborate structure designed and built to hold the Minotaur, a ferocious mythical creature

26   that was half man and half bull.  "[Minos] had Daedalus, a great architect, construct a labyrinth of twisting
     paths, so complex that escape was impossible for the uninstructed.  Here dwelt the Minotaur.  Into the

27   maze the young Athenians were cast, and from the monster no youth or maiden had ever escaped."  Edith
     Hamilton, *Mythology* 150-151 (1942).

28

1  refused her early payoff of the settlement are not controverted or rebutted by any

2  evidence and are corroborated by a provision in the Global Settlement Agreement that

3  after the Approval Date, Andra Sachs could make a written request to Trustee to talk

4  about paying off the settlement early.  *See Global Settlement Agreement* at 11-12,

5  ¶ 10(d).  The difference between the alternative final settlement amounts was trivial,

6  $12,500, representing less 2% of the settlement amount of $800,000 or $812,500, or less

7  than two-tenths of one percent (0.2%) of what Trustee now claims is owed by the

8  Judgment of $9,000,000.

9          The court agrees with the statements of Andra Sachs in her declarations that the

10  terms of the Global Settlement Agreement pertaining to the Dye Buyout Agreement were

11  confusing and unclear.  As Andra Sachs said in one of her declarations, "The confusing

12  part of the settlement agreement was exactly how much was to be paid, when, and to

13  whom, and where was the payment to be made?"  *Andra Judgment Motion Declaration* at

14  2.  When the Global Settlement Agreement was entered into in September 2005, no one

15  could know for certain what the final settlement payment would be, and when it should be

16  paid, because it was tied to events to occur in the future, which included the Approval

17  Date, which was also tied to events in the future (approval by the California and Florida

18  bankruptcy courts), and whether Trustee received or recovered payment of $2 million

19  from the other defendants, which was tied to events in the future based in developments

20  in the litigation.  *Global Settlement Agreement* at 3-5, ¶¶ 2-5 and at 10-11, ¶¶ 10(a)-(c),

21  *attached as Exhibit 2 to Stipulation of Facts*.  The fixing of the amount of the last

22  settlement payment and the due date was dependent on the outcome or non-outcome of

23  the Adversary Proceeding against the other defendants and the Trustee's receipt or

24  recovery of funds based on that outcome by a certain date, which in turn was not fixed

25  until the Approval Date, which was itself not fixed until both the California and Florida

26  bankruptcy courts approved the settlement and 10 days elapsed after the latter of those

27  approvals and there was no stay of enforcement of those orders.  *Id.*  Andra Sachs

28

signed the Global Settlement Agreement in September 2005, but the Approval Date was not fixed until June 26, 2006, nine months later. *Id.* at 18; *Stipulation of Facts* at 3, ¶ 6.

Under the so-called Dye Buyout Option in the Global Settlement Agreement, once the Approval Date was fixed, the final settlement payment would be determined based on the outcome or non-outcome of the Adversary Proceeding as of a certain date in the future, which was to be 36 months after the Approval Date. *Global Settlement Agreement* at 3-5, ¶¶ 2-5 and at 10-11, ¶¶ 10(a)-(c), *attached as Exhibit 2 to Stipulation of Facts*. However, the fixing of the amount of the final settlement payment, either $50,000 or $62,500, was dependent not only on the outcome of the Adversary Proceeding against the other defendants as of a certain date (but not the final outcome of that litigation, which did not fix the settlement amount), which was 36 months after the Approval Date, but also, whether Trustee received or recovered $2 million from the other defendants based on the outcome or non-outcome of the litigation as of the certain date of 36 months of the Approval Date. *Id.* None of the above-described payment trigger dates tied to the Approval Date were known when Andra Sachs signed the Global Settlement Agreement. *See Stipulation of Facts* at 3, ¶ 5.

Defendants' challenge in timely paying the last settlement payment is compounded because under the so-called Dye Buyout Option in the Global Settlement Agreement, the amount to be paid was dependent on Trustee's receipt or recovery of funds at least $2 million from the other defendants as of a certain date, 36 months after the Approval Date, but the Trustee's receipt or recovery of funds from the other defendants is a matter exclusively within the knowledge of Trustee and her counsel. *Global Settlement Agreement* at 10-11, ¶¶ 10(a)-(c), *attached as Exhibit 2 to Stipulation of Facts*. Paragraph 10(a) of the Global Settlement Agreement states, "The payment due under the Dye Buyout Option shall be $50,000 if, within 36 months of the Approval Date, Dye <u>receives</u> at least $2,000,000 from the remaining defendants . . . . Such $50,000 payment shall be due within 60 days after Dye <u>receives</u>, and <u>notifies</u> Andra that she <u>has received</u>, at least $2,000,000 from the Other Defendants." *Id.* at 10-11, ¶ 10(a)

19

1    (emphasis added).  The alternative provision to paragraph 10(a), paragraph 10(b) of the

2    Global Settlement Agreement, states, "The payment due under the Dye Buyout Option

3    shall be $62,500 if Dye's <u>recovery</u> against the Other Defendants in the Dye v. Andra

4    Adversary Proceeding within 36 months of the Approval Date is less than $2,000,000

5    (including if there is no such recovery at all).  Such $62,500 payment shall be due with

6    the earlier of (i) the end of the 37th month after the Approval Date or (ii) such time as

7    there is a final resolution of the Dye v. Andra Adversary Proceeding by entry of a

8    judgment or an order approving a settlement agreement."  *Id.* at 11, ¶ 10(b) (emphasis

9    added).  The court notes the parallelisms between these two alternative clauses in that

10    they speak of Trustee's receipt or recovery of funds from the other defendants rather than

11    any award by the court in the adversary proceeding and the lack of parallelism between

12    the alternative clauses in Trustee's giving notice of receipt in the first alternative and the

13    complete absence of giving notice in the second alternative.  *Id.* at 10-11, ¶¶ 10(a)-(b).

14        However, under paragraph 10(b) of the Global Settlement Agreement for Dye

15    Buyout Option number two, Trustee and her counsel were not going to tell Andra Sachs

16    because they bargained not to tell her by giving her notice of what Trustee had recovered

17    less than $2 million by the 36th month of the Approval Date.  *Id.; Weinstein Reply*

18    *Declaration* at 15, ¶ 5 ("I told Mr. Bastian that because an extended period was going to

19    pass before Ms. Sachs would have to make the Buyout payment, the Trustee and I

20    specifically did <u>not</u> want to have the obligation to remember to notify Ms. Sachs and

21    make a demand.").  What was particularly tricky about the Dye Buyout Option—and

22    apparently intentionally so by Trustee and her counsel—is that under the Global

23    Settlement Agreement, Trustee would give notice to Defendants if she received at least

24    $2 million, but not if she recovers less than $2 million, which was the case here.  *Id.*  As

25    stated earlier, Trustee and her counsel knew and anticipated that Defendants' counsel

26    would not be representing them for much longer and that Trustee and her counsel did not

27    want to deal with Andra Sachs unrepresented.  *Id.*  The inconsistent notice provisions in

28    paragraphs 10(b) and 10(c) of the Global Settlement Agreement  apparently threw off

1    Bastian, Defendants' former counsel, because as Andra Sachs stated in one of her

2    declarations, he advised her just to wait to hear from Trustee about what was owed on

3    the final settlement payment. *Id.; Andra Judgment Motion Declaration* at 2-3.  However,

4    as indicated in these inconsistent notice provisions, Andra Sachs and her counsel could

5    hear from Trustee and her counsel or not hear. *Id.*

6         Andra relied upon her counsel, Bastian, to let her know when to make the final

7    settlement payment under the Global Settlement Agreement, but Bastian, who told the

8    court that he would not let Andra Sachs default under the settlement agreement "over

9    [his] dead body" did not tell her when to make the last payment because he no longer

10   represented her. *Id.*  As noted earlier, Trustee and her counsel, Weinstein, knew that

11   Bastian would not be representing her for much longer after the settlement was approved

12   and intended that no notice be given her when the last payment was due. *Id.*

13        It is apparent that Trustee and her counsel intended that Andra Sachs as a

14   layperson would have to figure out on her own, soon to be unassisted by counsel, the

15   complicated settlement payment structure in the Global Settlement Agreement and

16   monitor all of the events and trigger dates in the agreement as well as follow the events

17   in the litigation involving the other defendants, all of these tasks to make the last

18   settlement payment, since she "settled."  Also, these tasks were made more difficult

19   because the last settlement payment amount was a moving target given the number of

20   variables to determine the amount.  Perfect timing was required for Andra to make timely

21   payment of the final settlement amount within a short one-month window again marked

22   from the Approval Date, which was between the end of the 36th month from that date

23   when the amount would be fixed based on the Trustee's recovery amount within those 36

24   months and the end of the 37th month after that date when the last payment was due.

25        The problem with this arrangement is that Andra was dependent on the Trustee

26   telling her what, when and where to pay for the last settlement payment.  Andra did not

27   know what to pay at the time the settlement was approved because the amount was

28   dependent on whether Trustee received $2 million from the other defendants 36 months

into the future.    Andra did not know where to make the last settlement payment because no information was stated in the Global Settlement Agreement where to tender payment. Ironically, Trustee and her counsel expected Andra to communicate with them, but they purposely arranged in the Global Settlement Agreement not to have contact with her by giving her notice of what was due, and when and where to make payment.

While Defendants were responsible for paying a final settlement payment of $62,500 to the Trustee by July 31, 2009, based on events that had taken place, Trustee did not demand payment or otherwise communicate at all with Defendants until January 2012.  In January 2012, Trustee's counsel, Weinstein, finally telephoned Defendants' prior counsel, Bastian, that payment of the entire $9 million was due.  Not unexpectedly, Bastian told Weinstein that he no longer represented Defendants.  Defendants immediately offered to deliver to the Trustee the remaining settlement payment of $62,500, but Trustee refused payment, demanding instead the penalty amount.

These perverse circumstances at best represented a "perfect storm" that Defendants are liable for a judgment 10 times more than what they settled for (or 144 times what remained due), which was in violation of applicable state contract law as an unreasonable and unenforceable penalty, or at worst, a "trap for the unwary" set by Trustee and her counsel, who intentionally insisted that the settlement agreement provide for no notice to Defendants of the last settlement payment when it became due and who expected that Defendants would not likely to represented by counsel shortly because that counsel told Trustee's counsel that he would not be representing Defendants after the settlement was approved.  The court can discern no rational basis for the complicated settlement payment structure of the Dye Buyout Option of the Global Settlement Agreement, inconsistent notice provisions, and Trustee's failure to give any notice of the amount due under the amount was fixed other than to trap the unwary Defendants into paying the full judgment amount.  There is no other legitimate collection purpose for the so-called Dye Buyout Option because Defendants wanted to make an early payment of the full settlement amount as evidenced by their payment of $750,000 of the either

22

1    $800,000 or $812,500, over 90% of the settlement amount due, and based on Andra

2    Sachs' uncontroverted statements in her declarations, Defendants were ready, willing

3    and able to pay the balance when they entered into the settlement in 2005.

4    Although there is a strong policy in favor of finality of the two settlement orders,

5    this court finds that under the extraordinary circumstances of this case, it would be

6    manifestly unjust and inequitable for this court to enforce the unreasonable and

7    unconscionable liquidated damages penalty of $9,000,000—144 times the remaining

8    amount due under the settlement—requested by Trustee.  *See Greentree Financial*

9    *Group, Inc. v. Execute Sports, Inc.*, 163 Cal. App. 4th at 499-500; *cf.*, *H.S. Perlin  Co.,*

10   *Inc. v. Morse Signal Devices of San Diego*, 209 Cal. App. 3d at 1300-1302.  The court

11   emphasizes the inequitable post-judgment circumstances in this case because

12   Defendants were not given notice of the amount due on the last settlement payment

13   based on Trustee's exclusive knowledge of what she received or recovered within 36

14   months of the Approval Date, which made it impossible for Defendants to perform their

15   last remaining obligation under the settlement agreement to make the last payment.

16   Here, Defendants needed to know how much and when to pay the last settlement

17   payment, which were matters solely within Trustee's knowledge, and Trustee was not

18   telling them.

19   Andra's situation is strikingly similar to the facts of *In re Wescot International, Inc.*,

20   236 B.R. at 29-30.  In that case, the chapter 7 trustee had brought suit against the former

21   principal of the debtor, alleging he owed approximately $300,000 to the bankruptcy

22   estate.  236 B.R. at 29.  The parties eventually entered into a settlement, whereby the

23   principal was to give the trustee a promissory note in the amount of $50,000, with an

24   initial payment of $10,000 with the balance due in 24 monthly payments with interest.  *Id.*

25   In the event the principal defaulted, the trustee was entitled to entry of judgment in the

26   amount of $1 million.  *Id.*  The principal defaulted on two payments, though he kept the

27   trustee informed of his efforts to pay.  *Id.*  The trustee, however, sought entry of judgment

28   based on the principal's default.  *Id.*  But the trustee then agreed not to levy on the

23

principal's property to satisfy the judgment on the condition that principal remained

current on future payments under the settlement note, and would set aside the judgment

once payments were complete. *Id.* However, because of circumstances unknown to the

principal at the time, he did not remain current, and the trustee sought enforcement of the

judgment on default. *Id.* at 29-30. The principal and the trustee agreed to compromise

the debt again, but a creditor objected to the compromise, purchased the judgment from

the trustee and sought to enforce the judgment for the full amount. *Id.* at 30. The

principal then brought adversary proceedings for declaratory and injunctive relief against

the purchaser seeking to block enforcement of the judgment and determine his rights. *Id.*

The bankruptcy court in *Wescot* "found that the $1 million judgment amounted to

an unreasonable forfeiture out of proportion to the original obligation," and held that the

judgment was an unconscionable penalty." *Id.* Also, finding that there was at least a tacit

agreement between the bankruptcy trustee and the principal to set aside the judgment

upon subsequent agreement to allow the principal to cure the initial default and complete

payments under the settlement note, the bankruptcy court held that the trustee "had led

[the principal] to reasonably believe that the judgment would be set aside upon

satisfaction of the promissory note." *Id.* Thus, the bankruptcy court held that the

principal was entitled to relief from judgment pursuant to Rule 60(b)(6) "because the

amount of the judgment [was] unreasonable in proportion to his original obligation and

the seriousness of the default." *Id.* at 31. The bankruptcy court then enjoined

enforcement of the judgment and held that the purchaser was entitled to the unpaid

amount of the settlement note, plus interest at the note rate and attorneys' fees, less any

money previously recovered by the purchaser through writs of execution. *Id.* On the

appeal of the assignee of the trustee which purchased the judgment, the district court

affirmed. *Id.* at 31-34.

On appeal to the district court in *Wescot*, the purchaser argued that the bankruptcy

court lacked jurisdiction to enjoin the stipulated judgment for $1 million under the

settlement pursuant to Rule 60(b) of the Federal Rules of Civil Procedure because the

24

1    principal did not seek such relief within a reasonable time.  *Id.* at 30-31.  The district court

2    held that the bankruptcy court did not abuse its discretion in enjoining enforcement of the

3    $1 million default judgment pursuant to Rule 60(b)(6) because the principal had shown

4    extraordinary circumstances to warrant relief.  *Id.* at 31-34.  The district court held that the

5    bankruptcy court did not abuse its discretion based on its determinations that the amount

6    of the default judgment was unreasonable in proportion to the original obligation and the

7    seriousness of the default, resulting an unconscionable penalty based on California law,

8    which it held to be instructive and applicable based on the "dearth of federal law on

9    point," and the principal was induced not to appeal the judgment in reasonable reliance

10   on the trustee's promise not to enforce the default judgment based on payment of the

11   note.  *Id., citing inter alia, Sybron Corp. v. Clark Hospital Supply Corp.,* 76 Cal. App. 3d

12   896 (1978).

13         The court concludes that the two primary case authorities relied upon by Trustee

14   do not warrant denial of Rule 60 relief, namely, *Xerox Financial Services Life Insurance*

15   *Co. v. High Plains Limited Partnership,* 44 F.3d 1033 (1st Cir. 1995) and *Van Curen v.*

16   *Escamilla (In re VEC Farms, LLC),* 395 B.R. 674 (Bankr. N.D. Cal. 2008).  The First

17   Circuit upheld the district court's denial of a judgment debtor's Rule 60 motion by

18   rejecting the debtor's claim that the settlement agreement imposed an unenforceable

19   liquidated damages penalty of holding him to the full liability of $6 million for his default on

20   a settlement payment of $125,000.  44 F.3d at 1040.  In so holding, the First Circuit

21   stated: "This case does not involve in isolation the collection of $6 million for failure to pay

22   a $125,000 debt.  Any judgment about disproportion would depend on the reasonable

23   magnitude of all the claims settled by the [original] settlement and all of the benefits

24   received by [plaintiff]."  44 F.3d at 1040, *quoted in Trustee's Reply Memorandum* at 7,

25   *citing Xerox Financial Services,* 44 F.3d at 1040.  The actual grounds of the First Circuit's

26   holding were that the judgment debtor made an insufficient showing that there was a

27   penalty under the circumstances of the case: "In all events, there is no showing that

28   enforcement of the judgments involves a penalty."  *Id.*  The First Circuit further stated that

1   "[e]ven if the penalty defense were available, it was [debtor's] burden to make a colorable

2   showing of overall disproportion [under Illinois law] through affidavits before the district

3   court needed even consider taking the claim seriously" and that "[h]is jumble of

4   assertions and conclusions does not even begin to make such a showing."  *Id.*  The First

5   Circuit concluded that the issue of whether a federal judgment may be set aside is a

6   matter of federal law, though state law is "very instructive" and observed that on the issue

7   of whether a penalty defense is available on a contract of "accord," i.e., a contract to

8   settle a pending or threatened lawsuit, "the sparse case law is divided, weighted slightly

9   in favor of Williston" which says that such a defense is not available.  44 F.3d at 1039,

10  *citing,* 5 Williston, *Contracts* § 780, at 700-01 (3d ed. 1961) and *comparing Resolution*

11  *Trust Corp. v. Avon Ctr. Holdings, Inc.,* 832 P.2d 1073, 1075 (Colo. Ct. App. 1992)

12  (holding that the penalty analysis is inappropriate); *Crosby Forrest Products, Inc. v.*

13  *Byers,* 623 So.2d 565, 568 (Fla. Dist. Ct. App.1993) (same); *Security Pacific Nat'l Bank v.*

14  *Roulette,* 24 Ohio St.3d 17, 492 N.E.2d 438, 441 (1986) (same) *with Sybron Corp. v.*

15  *Clark Hosp. Supply Corp.,* 76 Cal. App. 3d 896, 143 Cal. Rptr. 306, 310 (1978) (finding

16  an unenforceable penalty); *Aubrey v. Angel Enters., Inc.,* 43 Wash.App. 429, 717 P.2d

17  313, 315 (1986) (same).

18      The court is not persuaded that *Xerox Financial Services* case has much

19  application here and agrees with the analysis by the district court in *Wescot* that there is

20  a dearth of federal law on point, that there is no circuit authority in this circuit on point and

21  that state law on contracts is very instructive in interpreting the settlement contract,

22  though whether to grant relief under Rule 60 is a matter of federal law.  *In re Wescot*

23  *International, Inc.,* 236 B.R. at 33 n. 3 (applying California law to determine whether a

24  settlement judgment was an unconscionable liquidated damages penalty and declining to

25  follow *Xerox Financial Services*, though noting that case stands for proposition that state

26  law on contracts is very instructive on the precise issue).

27      Relying in part on *Xerox Financial Services,* in *VEC Farms,* the court denied the

28  judgment debtors' Rule 60 motion by rejecting their claim that the settlement agreement

imposed an unenforceable liquidated damages penalty under California law of holding

them to a liability of $1.1 million for a default on the settlement payment of $750,000.  395

B.R. at 687-691, *citing inter alia, Xerox Financial Services Life Insurance Co. v. High*

*Plains Limited Partnership,* 44 F.3d at 1039-1040.  The court in *VEC Farms* held that the

amount of the default judgment of $1.1 million, or $364,000 over the settlement amount,

was not an unenforceable liquidated damages penalty because under applicable

California contract law, California Civil Code, § 1671(b), the liquidated damages amount

bore a reasonable relationship to the range of harm that might have been reasonably

anticipated by the parties to arise from breach of the settlement terms.  395 B.R. at 690

and 692.  The court in *VEC Farms* concluded that the amount of the alleged penalty at

issue in *VEC Farms* bore a reasonable relationship to the amount of actual damages

from the breach of the settlement agreement (the alleged penalty of $364,000 to the

settlement amount of $750,000, or a ratio of 0.5) and was "proportional" in amount to the

magnitude of the claims asserted by the trustee who was the judgment creditor.  *Id.* at

690.  "A liquidated damages provision is not invalid merely because it is intended to

encourage a party to perform, so long as it represents a reasonable attempt to anticipate

the losses to be suffered."  *Id.* at 691, *citing, Weber, Lipshie, & Co. v. Christian,* 52 Cal.

App. 4th 645, 656 (1997); *see also, Ridgley v. Topa Thrift & Loan Ass'n.,* 17 Cal. 4th at

981.

*VEC Farms* may be relevant to this case because the court in that case applied

California contract law at issue in the case at bar to determine whether a bankruptcy

settlement agreement was an unreasonable liquidated damages penalty, and in so

applying that law, that court determined that the settlement contract could be enforced

because it did not constitute a unreasonable liquidated damages penalty under

California.  To this extent, this court's analysis in the original memorandum decision and

this supplemental decision is not inconsistent with *VEC Farms.*

Trustee argues that the court should follow *VEC Farms* in concluding that state

law informs, but does not control, and also in distinguishing this case from "simple"

penalty cases, because as the court in *VEC Farms* observed, "this settlement agreement involved more than a series of payments and the Court's analysis involves more than an assessment of delay in making payments." *Trustee's Reply Memorandum* at 9.  Quoting *VEC Farms* with approval, Trustee urges that the court follow the approach of the First Circuit in *Xerox Financial Services* as described by the court in *VEC Farms:* "The approach taken by the First Circuit in *Xerox* is far more appropriate on these facts as it took into consideration the scope of the litigation, the competing claims, and the negotiated settlement terms in reaching its decision on proportionality and reasonableness." *Id., quoting, In re VEC Farms, LLC,* 395 B.R. at 684.

The court has carefully considered *VEC Farms* and declines to adopt Trustee's invitation to follow it because the case at bar is factually distinguishable from *VEC Farms*. This case is a simple penalty case.  Under the Global Settlement Agreement, having paid $750,000, over 90% due under the settlement, defendants were to pay the remaining less than 10% to Trustee in the amount of either $50,000 or $62,500 by a certain date, i.e., 37 months from the Approval Date, and the breach here is lateness in payment.  As observed earlier, Defendants were ready, willing and able to make either amount when the Global Settlement Agreement, but Trustee insisted on a delayed payment tied to a schedule that had to be computed through an analysis of a complex formula described in labyrinthian terms.  The penalty for late payment under the Global Settlement Agreement is a $9 million judgment, which do not have any reasonable or proportional relationship of the alleged penalty to the amount of actual damages from the breach of the settlement agreement (the alleged penalty of $8,187,500 against the settlement amount of $812,500, or a ratio of 10.08), though Trustee argues that there is a proportional relationship of the judgment and the original demand (i.e., a ratio of 1:1).  *Trustee's Reply Memorandum* at 9 ("the apt comparison is the judgment to be enforced to the pre-settlement claims").  There is no reasonable relationship between the breach and the penalty here because the penalty has no bearing on the actual damages from the breach for lateness, which makes it unconscionable and unenforceable under California law.

1   *California Civil Code,* § 1671(b); *Ridgley v. Topa Thrift & Loan Association,* 17 Cal.4[th] at

2   977; *In re Wescot International, Inc*., 236 B.R. at 31-34.  Moreover, this case is also

3   factually distinguishable from *VEC Farms* because Trustee's post-judgment enforcement

4   conduct made it impossible for Defendants to comply with the settlement agreement

5   because Trustee with her exclusive knowledge did not give notice of the amount due to

6   Defendants.  *In re Wescot International, Inc*., 236 B.R. at 29-34.

7         Trustee argues that Rule 60 relief cannot be granted because this court lacks

8   authority to grant relief as to the Florida Settlement Order.  *Trustee's Rule 60 Opposition*

9   at 1.  The court is not granting relief as to the Florida Settlement Order, but acting upon

10  the matters before this court, namely, Trustee's motion for entry of judgment, and

11  Defendants' motion for relief from orders.  Trustee argues that granting Rule 60 relief

12  would defeat the settled expectations of the Florida Chapter 7 bankruptcy trustee and

13  attaches copies of the case docket sheets in that case, noting that the case was closed.

14  *Id.*  The court notes that the case docket sheet in that case reflect that the Florida

15  bankruptcy trustee filed "Trustee's Final Report and Proposed Dividends" in that case on

16  December 17, 2007, "Trustee's Notice of Final Dividends to Creditors" on January 21,

17  2008, and "Trustee's Final Account of Estate, Application for Closing and Discharge and

18  Certification" on September 24, 2008.  *Case Docket Sheet, In re Bradford H. Sachs,* No.

19  03-30677-PGH Chapter 7 (United States Bankruptcy Court, Southern District of Florida),

20  attached as *Exhibit A to Trustee's Rule 60 Opposition.*  The Florida bankruptcy court

21  entered the "Final Decree and Discharge of Trustee" in the Florida bankruptcy case on

22  October 29, 2008, and the Florida bankruptcy case was closed on the same day.  *Id.*

23  These events took place before the last settlement payment under the Global Settlement

24  Agreement was due in June 2009, which indicates to this court that the Florida

25  bankruptcy trustee had no further expectations of recovery on behalf of that bankruptcy

26  estate from the settlement agreement.  As Defendants argue, it appears that the

27  expectation of the parties, including the Florida bankruptcy trustee, was that either

28  $800,000 or $812,500 would be due and paid under the settlement, of which $750,000

1    had been paid, so the Florida bankruptcy case was not worth keeping open for further

2    administration over the last payment of either $50,000 or $62,600. *Reply of Defendants*

3    *Andra Sachs, Ashby Enterprises and Max-Singer Partnership to Opposition to Motion for*

4    *Relief from Orders and Judgments Pursuant to Rule 60 of the Federal Rules of Civil*

5    *Procedure,* filed on December 11, 2012, at 3-4.  The court concludes that there is no

6    prejudice in granting Rule 60 relief to Defendants in regards to the Florida bankruptcy

7    estate because that case was administered on the expectation that the last settlement

8    payment of either $800,000 or $812,500 would be made as sought by the instant Rule 60

9    motion.  While the court has no jurisdiction to grant relief from the order of another court

10   and does not purport to grant such relief in this case, the court notes that its ruling on the

11   pending motions may have preclusive effect under the doctrines of claim or issue

12   preclusion.

13       All of the circumstances in the instant case indicate that Andra Sachs reasonably

14   believed that the entire $9 million judgment would never be enforced against her, most

15   importantly indicated by her clear ability and constant willingness to pay since she agreed

16   to the settlement.  This is a situation where the Trustee's litigation against the other

17   defendants took longer than expected, and now that the Trustee's litigation efforts against

18   the other defendants have failed, it is clearly evident that Trustee is attempting to collect

19   against the unsuspecting Andra Sachs Defendants, who were left in the dark for over

20   seven years from entry of the settlement in 2005 to learning of Trustee's full payment

21   demands in 2012.  Considering these Defendants' demonstrations of good faith in

22   attempting to comply under the Global Settlement Agreement, the labyrinthian nature of

23   the provisions of the Global Settlement Agreement, especially the unreasonable and

24   unconscionable Dye Buyout Provision and its "no notice" term, Trustee's anticipation that

25   Defendants would not be represented by counsel during the time period the last

26   settlement payment would become due and payable, and Trustee's failure to give notice

27   to Defendants of what was owed for the last settlement and when it was due, which were

28   matters solely within her exclusive knowledge of her recovery from the other defendants

in this adversary proceeding, the court finds that extraordinary circumstances warrant the application of Rule 60(b)(6) in this case; and, the Rule 60(b)(6) motion was brought with a reasonable time because Trustee did not notify Defendants of the amount due on the last settlement payment until 2012, Defendants agreed to tender the amount of the last settlement payment with interest, but were refused by Trustee and filed the Rule 60 motion shortly thereafter.

The court concludes that *Espinosa* is inapposite because this is not a situation where a party is seeking Rule 60(b)(6) relief as a substitute for appeal, but to avoid the consequences of post-judgment, post-appeal events which make the operation of the final orders unjust in these circumstances.  *In re Wescot International, Inc.*, 236 B.R. at 29-34.  Because the intent and effect of Rule 60(b)(6) relief here is not to avoid the *res judicata* effect of the final orders, but to do substantial justice based on the exceptional circumstances of this case, *Espinosa* is distinguishable from the case at bar, and the Andra Sachs Defendants are entitled to relief from enforcement of the judgment pursuant to Rule 60(b)(6).

Additionally, California Civil Code, § 3275, provides for relief from forfeiture: "Whenever, by terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in the case of a grossly negligent, willful, or fraudulent breach of duty."  *See also, Ridgley v. Topa Thrift & Loan Association,* 17 Cal. 4th at 976; 1 Witkin*, Summary of California Law,* Contracts, ¶ 832 at 915-916.  Here, Defendants may seek relief from forfeiture under the settlement contract by making full compensation to the other party, Trustee, by paying the last settlement payment, plus a reasonable rate of interest, from the due date to the date of payment.  As discussed herein, Defendants have not acted in a way to constitute a grossly negligent, willful or fraudulent breach of duty under the contract to except them from the application of California Civil Code, § 3275.  Defendants have been ready, willing and able to make the last settlement payment and would have done so if Trustee

1    had given them notice of what was due and when based on Trustee's exclusive

2    knowledge of these matters, and Defendants promptly tendered payment when they

3    finally learned of the amount due.

4        Moreover, California Civil Code, § 1670.5, provides for court action regarding an

5    unconscionable contract or clause of a contract:  "If the court as a matter of law finds the

6    contract or any clause of the contract to have been unconscionable at the time it was

7    made the court may refuse to enforce the contract, or it may enforce the remainder of the

8    contract without the unconscionable clause as to avoid any unconscionable result."

9    Because the court has found that the liquidated damages penalty of $9 million reflected in

10   the judgment being requested by Trustee is an unconscionable penalty, the court

11   pursuant to California Civil Code, § 1670.5 exercises its discretion to enforce the

12   remainder of the contract without the unconscionable penalty and grants the Rule

13   60(b)(6) motion to the extent to allow Defendants make the last settlement payment of

14   $62,500, plus interest at a reasonable rate, to Trustee in full satisfaction of their

15   obligations under the Global Settlement Agreement approved by this court in the

16   California Settlement Order.  Defendants have requested that the court grant relief from

17   the liability judgment sought by Trustee pursuant to the Global Settlement Agreement,

18   which is the subject of Trustee's motion for entry of judgment and is not yet entered, and

19   as such, is not ripe in a technical sense for Rule 60 relief.  Granting Rule 60 relief as to

20   the California Settlement Order approving the Global Settlement Agreement deeming

21   payment of the last settlement amount of $62,500 as full satisfaction of their liability will in

22   effect give Defendants the relief they seek by their Rule 60 motion.

23       The Global Settlement Agreement provides that a party may recover reasonable

24   attorneys' fees if they are reasonably required to enforce their rights under the

25   agreement.  *Global Settlement Agreement* at 16-17, ¶¶ 20, *attached as Exhibit 2 to*

26   *Stipulation of Facts*.  The court declines to make such an award at this time and grants

27   leave to the parties to file any motion for attorneys' fees under such provision within 30

28   days of entry of the order granting the Rule 60 motion.

1    In its original supplemental memorandum decision, the court held that

2 prejudgment interest should accrue from the due date at a "reasonable rate of interest."

3 However, the parties were unable to agree prior to the submission of a proposed

4 judgment by the Trustee what constitutes a "reasonable rate of interest" and mutually

5 agreed to submit a proposed judgment with a blank space as to the applicable rate of

6 interest and for each side to submit short memoranda of points and authorities in support

7 of their respective positions for the court's consideration.  *Defendants' Memorandum re:*

8 *(1) Applicable Pre-Judgment Interest; & (2) Accrual of Prejudgment Interest from Due*

9 *Date Through Date of Tender Not Judgment; Declaration of Ryan Michelman*

10 *("Defendants' Interest Memorandum")*, filed on March 28, 2013, at 2-5.;  *Plaintiff's*

11 *Memorandum Regarding Appropriate Rates of Interest for Judgment ("Trustee's Interest*

12 *Memorandum")*, filed on April 4, 2013, at 2-7.  Moreover, the parties were unable to agree

13 prior to submission of a proposed judgment whether postjudgment interest should accrue

14 from the due date to the date of tender or to the date of judgment.  *Id.*  After considering

15 the supplemental briefing of the parties on the issues pertaining to interest on the

16 judgment, the court hereby discusses and determines these issues pertaining to interest

17 on the judgment.

18    With respect to the applicable rate of prejudgment interest, the parties disagree

19 whether the court should apply a federal or state rate of interest.  *Defendants' Interest*

20 *Memorandum* at 2-4; *Trustee's Interest Memorandum* at 3-5.  While defendants are

21 correct in asserting that the underlying claim in the lawsuit was a preference action,

22 which is a claim under federal bankruptcy law, 11 U.S.C. § 547, the debt arises from the

23 settlement agreement reached between the parties, which the court construes as a claim

24 under California contract law.  The court did not resolve the Trustee's claim by

25 determining that she had established a preference claim against defendants; rather, the

26 claim was resolved by a settlement agreement, which was a matter of contract under

27 California state law.  *See Stipulation of Facts* at 3, ¶ 6.  Pending before the court is the

28 Trustee's motion for judgment based on an asserted breach of the global settlement

1    agreement between the parties, and the court applied state law to determine the

2    Trustee's right to recover, and as such, the court concludes that it should apply state law

3    regarding prejudgment interest.  *Otto v. Niles (In re Niles),* 106 F.3d 1456, 1463 (9th Cir.

4    1997) (where a claim "arose under state law, the award of prejudgment interest

5    is . . . also governed by state law").  Under California Civil Code, § 3289, unless stated

6    otherwise in the contract, the legal rate of interest on a claim of breach of contract is 10

7    percent per annum, accruing from the date of breach "until the contract is superseded by

8    a verdict or other new obligation."  Accordingly, the court holds that the applicable rate of

9    prejudgment interest is 10 percent per annum.

10          The parties do not dispute that under the Global Settlement Agreement, the due

11    date of the second and final settlement payment, was August 1, 2009.  Defendants

12    contend that prejudgment interest should only accrued from the due date of August 1,

13    2009 to not later than April 1, 2012, the date that defendants tendered performance

14    under the settlement agreement, but Trustee argues that prejudgment interest should

15    accrue through the date of judgment.  *Defendants' Interest Memorandum* at 5; *Trustee's*

16    *Interest Memorandum* at 5-6.

17          Under California Civil Code, § 1504, "an offer of performance, duly made, through

18    the title to the thing offered be not transferred to the creditor, stops the running of interest

19    on the obligation, and has the same effect upon all its incidents as a performance

20    thereof."  The requisites of tender are: (1) full performance; (2) at a proper time and

21    place; (3) made by the debtor or someone on her behalf; (4) to the creditor or some

22    authorized person; (5) at a place appointed by the creditor; (6) timely; (7) unconditional;

23    and (8) offer made in good faith.  1 Witkin, *Summary of California Law,* Contracts, § 771

24    at 861-862 (10th ed. 2005 and 2013 Supp.), *citing,* California Civil Code, §§ 1486 *et seq.*

25    Actual production of the property is not required; a party must simply be able to produce

26    it.  California Civil Code, § 1496; *see also,* 1 Witkin, *Summary of California Law,*

27    Contracts, § 771, at 862.  An offer in writing to pay a particular sum of money is, if not

28    accepted, equivalent to action of production and tender of the money.  California Code of

34

1   Civil Procedure, § 2074; *see also,* 1 Witkin, *Summary of California Law,* Contracts, § 771,

2   at 862,.

3       As stated in the *Stipulation of Facts,* "[a]fter Andra received service of the

4   Judgment Motion in March 2012, she and her counsel offered, more than once in March

5   2012 and thereafter, to deliver $62,500 to Trustee Dye . . . Andra intended that such

6   payment would satisfy the obligations of the Andra Sachs Defendants under the Global

7   Settlement Agreement."  *Stipulation of Facts* at 4, ¶ 12.  As further stated in the

8   *Stipulation of Facts,* "Trustee Dye, however, declined to accept the money."  *Id.*

9   Arguably, these stipulated facts may not constitute a perfect tender, but a perfect tender

10  may be excused where the debtor is induced by conduct of the creditor to delay or

11  neglect performance.  California Civil Code, § 1511(1), (3); 1 Witkin, *Summary of*

12  *California Law,* Contracts, § 774 at 864-865.  As discussed above, because Trustee did

13  not give defendants reasonable notice of the amount due under the Global Settlement

14  Agreement until March 2012, the court concludes that defendants' offer to make full

15  payment in March 2012 under the settlement qualifies as a proper tender under California

16  Civil Code, § 1504, and the lack of a perfect tender is excused.  Accordingly, Trustee

17  should be awarded prejudgment interest from the due date of August 1, 2009 to the date

18  of tender by defendants, which the court deems to be April 1, 2012.

19      The parties agree that the postjudgment rate of interest is governed by federal law,

20  specifically, 28 U.S.C. § 1961, which allows interest calculated from the date of entry of

21  the judgment at the rate of the weekly average 1-year constant maturity Treasury yield for

22  the preceding calendar week.  Currently, this rate as of the week ending June 14, 2013

23  was 0.14%.  The court adopts this rate as the postjudgment rate for the entry of judgment

24  made concurrently herewith.

25      ///

26      ///

27      ///

28

1    This Supplemental Memorandum Decision amends and supplements the original

2  Memorandum Decision entered on March 4, 2013.  To the extent that the original

3  Memorandum Decision and this Supplemental Memorandum Decision are inconsistent,

4  this Supplemental Memorandum Decision supersedes the prior memorandum decision.

5    IT IS SO ORDERED.

6                                                    ###

Date: June 24, 2013

_____

Robert Kwan
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **AMENDED SUPPLEMENTAL MEMORANDUM DECISION RE: PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT AND DEFENDANT'S MOTION PURSUANT TO FED. R. CIV. P. 60** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **June 24, 2013**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below:

Natalie C Boyajian    natalie.daghbandan@bryancave.com,
raul.morales@bryancave.com;trish.penn@bryancave.com
Allen Chiu    allen.chiu@lw.com
Jacquelyn H Choi    jchoi@wwolawyers.com
Robert A Franklin    rfranklin@murraylaw.com
Andy Kong    Kong.Andy@ArentFox.com
Nhung Le    nle@luce.com
Elan S Levey    elan.levey@usdoj.gov, louisa.lin@usdoj.gov
Ronald E Michelman    ronaldmichelman@sbcglobal.net
Kimberly A Posin    kim.posin@lw.com
Amy Quartarolo    amy.quartarolo@lw.com, laura.pumerville@lw.com
Shelly Rothschild    rothschildlaw@yahoo.com
David R Weinstein    david.weinstein@bryancave.com,
raul.morales@bryancave.com;trish.penn@bryancave.com

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

Latham & Watkins LLP
Daniel Scott Schecter
633 W. Fifth St., Suite 4000
Los Angeles, CA  90071

Pachulski Stang Ziehl & Jones LLP
Teddy M. Kapur
10100 Santa Monica Blvd., Suite 1300
Los Angeles, CA  90067-4114

Stutman Triester & Glatt
K. John Shaffer
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA  90067

Shulman, Hodges & Bastian LLP
James C. Bastian
8105 Irvine Center Dr., Suite 600
Irvine, CA  92618

M. Alim Malik
Jackson DeMarco Tidus & Peckenpaugh
2030 Main St., Suite 1200
Irvine, CA 92614

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California